PITTA & DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 652-3890
*Attorneys for Defendant*
*New York Hotel and Motel Trades Council, AFL-CIO*

Bruce J. Cooper (BC 2764)
Michael J. D'Angelo (MD 3030)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – – – x

JOSEPH BEJJANI, HENRY BOLEJSZO,
ALAIN BREDA, AHMAD BULLA,
VIRGIL COSTACHE, GEOFFREY
HABERER, RUHEL HASSAN, RICKY
GARCIA, ABDELKABIR KAHTANE,
MOHAMMED KHAMFRI, KATHY                          Case No. 07-Civ-10729 (HB)(DCF)
KRINKE, STYLIANOS LOUKISSAS,
ERICH LUNZER, JAIRO MARTINEZ,
EDILBERTO MORCOS, JOHN
O'CONNOR, AART VAN DERLAAN,
OSCAR FLORES, and ROBERTO
ZEGARRA,

                    Plaintiffs,

        -against-

MANHATTAN SHERATON
CORPORATION d/b/a ST. REGIS
HOTEL, and NEW YORK HOTEL and
MOTEL TRADES COUNCIL, AFL-CIO,

                    Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – x

**MEMORANDUM OF LAW OF DEFENDANT NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO IN SUPPORT OF ITS MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FRCP 12(b)(1) and (6)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          General Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

          Industry Room Rentals Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          The St. Regis Tip Pool. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          Access to IC Awards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          Other Unresolved Grievances. . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    POINT 1       PLAINTIFFS LACK STANDING TO CONFIRM THE ROSS
                AWARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    POINT II      PLAINTIFFS' SECOND AND FOURTH CLAIMS MUST BE
                DISMISSED BECAUSE THEY HAVE FAILED TO EXHAUST
                THEIR REMEDIES UNDER THE COLLECTIVE BARGAINING
                AGREEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    POINT III     PLAINTIFFS' SECOND AND FOURTH CLAIMS ARE BARRED
                BY THE STATUTE OF LIMITATIONS. . . . . . . . . . . . . . . . . . . . 16

    POINT IV    PLAINTIFFS ARE NOT ENTITLED TO ACCESS TO ALL IC
                DECISIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

    POINT V     PLAINTIFFS ARE NOT ENTITLED TO HAVE ARBITRATIONS
                TRANSCRIBED OR TAPE RECORDED. . . . . . . . . . . . . . . . . . 20

    POINT VI    PLAINTIFFS SIXTH CLAIM FOR RELIEF IS PREEMPTED BY
                FEDERAL LABOR LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    POINT VII   THE UNION DID NOT VIOLATE, AS A MATTER OF LAW
                ITS DUTY OF FAIR REPRESENTATION. . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

**Case**                                                                                    **Page(s)**

*Achtman v. Kirby, McKiernan & Squire, LLP,*
    464 F.3d 328, 337 (2d Cir. 2006).........................................................................11

*Am Renaissance Lines, Inc. v. Saxis S.S. Co.,*
    502 F.2d 674 (2d Cir. 1974)..............................................................................13

*ATSI Communications Inc. v. Shaar Fund, Ltds.,*
    493 F.3d 87,98 (2d Cir. 2007)...........................................................................11

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)..............................................................................11

*Cleveland v. Porca Co.,*
    38 F.3d 289,96-97 (7th Cir. 1994) .....................................................................12

*Cohen v. Koenig,*
    25 F.3d 1168, 1172 (2d Cir. 1994).....................................................................10

*Cohen v. Flushing Hosp. & Med Ctr.,*
    68 F.2d 64, 68 (2d Cir. 1995)............................................................................17

*Conley v. Gibson,*
    355 U.S. 41, 45-46 (1957) ................................................................................10

*DelCostello v. International Bhd. of Teamsters,*
    462 U.S. 151,158 (1983)...............................................................................16,17

*District Council No. 9 v. APC Painting, Inc.,*
    272 F. Supp. 2d 229, 240 (S.D.N.Y. 2003)..........................................................13

*Flanigan v. ITB, Truck Drivers Local 671,*
    942 F.2d 824, 827 (2d Cir. 1991).......................................................................17

*Fraternal Order of Police National Labor Council, USPS No. 2 v.
United States Postal Service,*
    988 F.Supp. 701-709 (S.D.N.Y. 1997) ...............................................................15

*Ghartey v. St. John's Queens Hospital,*
    869 F.2d 160, 162 (2d Cir. 1989)...................................................................16, 17

*Grandon v. Merrill Lynch & Co.,*
    147 F.3d 184, 188 (2d Cir. 1998).........................................................................2

*Hines v. Anchor Motor Freight, Inc.,*
    424 U.S. 554, 567 (1976)................................................................15,24

*Hishon v. King & Spalding,*
    467 U.S. 69,73 (1984)......................................................................11

*In Re Joint E. & S. Dist. Asbestos Litig.,*
    14 F.3d 726, 730 (2d Cir. 1993).........................................................10

*In the Matter of the Roosevelt Hotel v. New York Hotel &*
*Motel Trades Council, AFL-CIO,*
    95 Civ. 5016 (1996)(AGS)(S.D.N.Y. March 11, 1996) ........................20

*Iqbal v. Hasty,*
    490 F.3d 143, 157-58 (2d Cir. 2007) ..................................................11

*Kamen v. American Tel. & Tel. Co.,*
    791 F.2d 1006, 1011 (2d Cir. 1986).....................................................10

*LoPresti v. Andrew Merson,*
    00 Civ. 4255 (JGK), 2001 U.S. LEXIS 16062, at *3-*4
    (S.D.NY. Sept. 18, 2001) ...............................................................2,10

*Los Angeles v. Preferred Communications, Inc.,*
    476 U.S. 488, 493 (1986)..............................................................10,11

*Martin v. Youngstown Sheet & Tube Company.,*
    911 F.2d 1239, 1244 (7th Cir. 1990) ..................................................12

*Pitta v. Hotel Association of New York City, Inc.,*
    806 F.2d 419,422 (2d Cir. 1986)........................................................16

*Republic Steel Corp. V. Maddox,*
    379 U.S. 650 (1965)........................................................................15

*Schermerhorn v. James,*
    No. 96 Civ. 980 (JSR), 1997 WL 681345 at *2 (S.D.N.Y. Oct. 31, 1997) ...........18

*Scheuer v. Rhodes,*
    416 U.S. 232, 236 .........................................................................10

*Sira v. Morton,*
    380 F.3d 57,67 (2d Cir. 2004)...........................................................11

*Tanzillo v. Local Union 617, Intern. Broth. of Teamsters,*
 769 F.2d 140 (3d Cir. 1985)..................................................................................19

*Textile Workers v. Lincoln Mills of Alabama,*
 353 U.S. 448, 451 (1957).......................................................................................21

*United Steelworkers of America v. Rawson,*
 495 U.S. 362, 368 (1990)........................................................................................22

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,*
 363 U.S. 574, 581 ..............................................................................................23,24

*Vaca v. Sipes,*
 386 U.S. 171, 183 (1967)...................................................................................15,23

*Watterson v. Page,*
 987 F.2d 1 (1st Cir. 1993) ......................................................................................11

*White v. White Rose Food,*
 237 F. 3d 174, 179 (2d Cir. 2001)..........................................................................24

**Statutes and Miscellaneous Authorities**

Arbitration Case No.: U05-649 ...........................................................................5,7,13,14

Impartial Chairman Allen G. Schwartz Award No.: 86-104 .............................................21

Impartial Chairman Herbert B. Evans Award No.: 95-106 ..........................................20,21

Impartial Chairman Herbert B. Evans Award No.: 95-113 .............................................21

Impartial Chairman, Philip Ross Award No.: 2007-40 (Hilton Award)......................5,6,19

Impartial Chairman, Philip Ross Award No.: 2007-85R (Clarification Award)............6,19

Industry Wide Agreement (IWA) ........................1,3,4,5,6,7,8,12,14,15,16,19,20,21,22,23

Labor-Management Reporting and Disclosure Act ("LMRDA")......................................18
 29 U.S.C. §§412, 414

Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure......................1,10,11,16,25

Section 196(d) of the New York State Labor Law .................................................1,2,21,22

Section 301 of the Labor Management Relations Act
 of 1947, 29 U.S.C. § 185 ("LMRA") (case no. 07-CV-1740)....................1,12,15,21,22

## PRELIMINARY STATEMENT

Defendant New York Hotel & Motel Trades Council, AFL-CIO ("Union" or "HTC") hereby submits this Memorandum of Law in support of its motion, pursuant to Rules 12 (b)(1) and (6) of the Federal Rules of Civil Procedure ("FRCP"), for an order dismissing plaintiffs' Second Amended Complaint ("Complaint")(Cooper Aff., Exhibit "A")[1] in its entirety and granting judgment in the Union's favor.

In this action, plaintiffs seek: (1) to confirm a labor arbitration award pursuant to Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185(a); (2) to have this Court declare that the Union has violated its duty of fair representation by not seeking to confirm a labor arbitration award, by failing to adequately represent the plaintiffs with respect to a Tip Pool and other grievances concerning overstaffing, bartending, meetings, breakfasts, receptions and coffee breaks; (3) to have unfettered access to all industry arbitration awards; and (4) an order of the Court directing transcriptions or tape recording of arbitrations, or at minimum allowing arbitrations to be transcribed or tape recorded upon the plaintiffs' request. Finally, plaintiffs ask this Court to declare, pursuant to Section 196(d) of the New York State Labor Law, that the Union has violated its duty of fair representation and the Hotel has violated the IWA regarding the fact that the IWA obligates the Hotel to pay full contract gratuities on all banquet functions and not dilute plaintiffs' gratuities through the maintenance of an illegal Tip Pool.

---

[1] Refers to the affirmation of Bruce J. Cooper, Union's attorney, submitted herewith and in support of the Union's motion to Dismiss, and the Exhibits attached thereto and made a part hereof.

The Court should grant the Union's motion to dismiss because: (1) plaintiffs have no standing to confirm a labor arbitration award, especially an award where the plaintiffs and their employer were not parties to the underlying arbitration; (2) the Union has not breached its duty of fair representation by not confirming a labor arbitration award; (3) the Union has not breached its duty of fair representation since it is grieving and arbitrating all of the issues raised by plaintiffs; (4) plaintiffs' Second and Fourth claims are time barred; (5) plaintiffs are not entitled to *all* of the industry arbitration awards and, in fact, the Union has asked plaintiffs for the particular issue or contract clause that they believe affect them directly; (6) plaintiffs are not entitled to have arbitrations transcribed pursuant to industry practice; and (7) plaintiffs' claim pursuant to Section 196(d) of the New York State Labor Law is preempted by Federal labor law.

## STATEMENT OF FACTS[2]

General Background

The Union is a labor organization within the meaning of federal labor law, representing over 25,000 workers employed in New York City's hospitality industry. The Union negotiates with a multi-employer organization known as the Hotel Association of New York City, Inc. ("Hotel Association") which represents the majority of major hotels in New York City for the purposes of collective bargaining. (Complaint ¶ 26). The Union and Hotel Association have

---

[2] The statement of facts is based upon the allegations set forth in the Complaint and the documents referenced therein, attached thereto or which are integral to the allegations contained in the Complaint, or are documents of which the Court may take judicial notice; all of which may be considered by the Court in deciding a motion to dismiss. *LoPresti v. Andrew Merson*, 00 Civ. 4255 (JGK), 2001 U. S. LEXIS 16062, at *3-*4 (S.D.N.Y. Sept. 18, 2001) (Citations omitted). The Complaint's allegations are accepted as true solely for the purposes of this motion to dismiss. *Grandon v. Merrill Lynch & Co.*, 147 F. 3d 184, 188 (2d Cir. 1998).

negotiated a collective bargaining agreement known as the "Industry Wide Agreement" ("IWA")

(Cooper Aff., Exhibit "B") covering the terms and conditions of employment for the employees

of hotels represented by the Hotel Association.

Article 26 of the IWA provides for final and binding arbitration as the means for

resolving disputes between the parties.  The IWA reads in pertinent part:

> All complaints, disputes or grievances arising between the parties hereto involving
> questions or interpretation or application of any clause of this Agreement, or any
> acts, conduct or relations between the parties, directly or indirectly, which shall
> not have been adjusted by and between the parties involved shall be referred to a
> permanent umpire(s) to be known as the Impartial Chairperson ["IC"], and his/her
> decision shall be final and binding upon the parties hereto.... All arbitration
> hearings shall be heard at the Office of the Impartial Chairperson ("OIC")....
> (Complaint ¶¶ 30, 31) (Cooper Aff., Exhibit "B").

Defendant Manhattan Sheraton Belmont d/b/a St. Regis Hotel ("Hotel" or "St. Regis") is

an employer within the meaning of the federal labor law and employs employees represented by

the Union. (Complaint ¶ 27).  The St. Regis is a member of the Hotel Association and is bound

by the IWA. (Complaint ¶¶ 1 and 28).

Plaintiffs are banquet waiters employed by the Hotel, and as such, are bargaining unit

members represented by the Union and are covered by the terms and conditions set forth in the

IWA. (Complaint ¶ 6).

<u>Industry Room Rentals Fees</u>

In 1995, the Union and Hotel Association have agreed that hotels would pay tipped banquet

employees, customarily called banquet servers, a minimum gratuity equal to fifteen percent (15%)

of the total banquet bill, in accordance with the practice as it existed at the time. This agreement was memorialized in Article 47(D)(1) of the IWA, which states in pertinent part:

> Effective July 1, 1995, except as otherwise provided herein, the UNION and the EMPLOYER agree that with respect to banquet functions, a <u>minimum</u> gratuity equal to fifteen percent (15%) shall be paid to tip category employees (banquet waiters/waitresses and captains) working said functions, pursuant to established practice in each hotel as of July 1, 1995.

(Complaint ¶ 45) (Cooper Aff., Exhibit "B").

In an effort to avoid paying this gratuity, individual hotels subsequently altered the established practice and began regularly charging banquet customers a "room rental" fee in addition to the customary food and beverage ("F&B") charge. No additional services were provided for this fee -- customers had always been provided a room in which to have the function at no charge. More importantly, no gratuities were paid on this "room rental" fee.

Some of the plaintiffs herein complained to the Union that the St. Regis was not paying them in accordance with the terms of Article 47(D)(1) of the IWA. (Complaint ¶ 45). However, the Union had also received a similar complaint from employees of the Hilton New York ("Hilton"), another member of the Hotel Association covered by the IWA, as well as from other hotel employees in the hotel industry. As a result of these complaints, the Union submitted its dispute with the Hilton to the IC for binding arbitration pursuant to Article 26 of the IWA.

The Union's grievance submitted to the IC was whether under Article 47(D)(1) of the IWA gratuities had to be paid by the Hilton to tip category employees (banquet servers) for charges the Hilton billed customers as a "room rental" fee in connections with banquet functions. (Complaint ¶¶ 35, 36) (Cooper Aff., Exhibit "C").

4

During a meeting between the banquet servers, including plaintiffs, and the Union on July 27, 2005, the Union advised the banquet servers that there was already an on-going "industry wide" room rental arbitration claim. Moreover, in a notice dated February 3, 2006, the Union advised plaintiffs that a room rental arbitration case specific to the St. Regis had been filed under index no. U05-649. This grievance charged the St. Regis with "improper and illegal reduction in gratuity to Banquet Servers", as the Hotel "has simultaneously increased the percentage of banquet revenue charged to Room Rental and decreased the percentage of banquet revenue charge to Food & Beverage." (Complaint ¶¶ 50, 51) (Cooper Aff., Exhibit "D").

On June 7, 2007, another meeting was held between the banquet servers, including plaintiffs, and the Union. One of the items discussed during the meeting was the status of the pending room rental grievances, including those pertaining to the Hilton and St. Regis. At that meeting the Union specifically advised that it was awaiting an arbitration decision regarding the Hilton because it will have industry-wide implications. (Complaint ¶¶ 61, 62).

On or about August 23, 2007, IC Philip Ross in decision #2007-40, issued an Award in which he sustained the Union's grievance with the Hilton ("Hilton Award"), which stated, in part, as follows:

> I sustain the Union's grievance and direct the [Hilton] Hotel to henceforth pay gratuities in accordance with this Award and make whole all tipped banquet employees for any income lost as a result of the [Hilton] Hotel's violation. I hereby direct the parties to meet and determine this amount and, absent an agreement, I will retain jurisdiction over the matter. (Complaint ¶¶ 37, 38, 67) (Cooper Aff., Exhibit "E").

The Hilton Award further held that Article 47(D)(1) of the IWA "requires the hotel to include room rental in gratuity computations" and even extended its "holding to mean

that the [hotel] may [not] create or maintain a charge called something other than room rental, but having the same effect of diverting revenue." The holding applies to room rental and "any other fees or charges to banquet guests, regardless of what they may be called or when they were created." (Cooper Aff., Exhibit "E"). As of the present date, the Union has not sought to confirm the Hilton Award. (Complaint ¶¶ 76, 80).

On October 25, 2007, the Union hand delivered to plaintiffs' delegate the Hilton Award and notified him that the Hotel Association had called for an emergency hearing for October 30, 2007 seeking clarification of the Hilton Award. (Cooper Aff. Exhibit "F"). During the October 30, 2007 hearing, the Hotel Association challenged the industry-wide applicability of the Hilton Award. IC Ross ruled verbally that the Hilton decision is applicable industry-wide. (Complaint ¶¶ 89, 90).

On November 8, 2007, plaintiffs' delegates had a meeting with the Union's business agent and demanded that the Union enforce the Hilton Award. At this meeting the Union stated that the Hilton Award applied to other hotels, such as, the Mandarin Oriental Hotel, and that it was making efforts to have the Mandarin Oriental accept the Hilton decision. (Complaint ¶¶ 86, 87, 88) (Cooper Aff., "G").

In a letter dated December 11, 2007, the Union included a copy of IC Ross' written decision #2007-85R dated December 4, 2007. This written decision states in pertinent part

> As in all Impartial Chairperson Decisions, the Hilton Award #2007-40 has industry-wide application and is final and binding on all parties to the Industry-Wide Agreement ("IWA"). There is nothing in its language that limits or restricts its scope. However, the Award is based upon Article 47(D)(l) of the IWA, which was enacted in 1995 as a Union benefit circumscribing *each Hotel's established practices which remain the*

6

*starting point of the Award's individual Hotel application.* (Complaint ¶94) (Cooper Aff., Exhibit "H") ("Clarification Award") (Emphasis Added).

On March 6, 2008, the Union reinstated the room rental case specific to the St. Regis, #U05-649. Arbitration was scheduled for March 19, 2008. Also, on March 6, 2008, the Union advised the St. Regis banquet servers of an offer from the St. Regis concerning the room rental case which included back pay of approximately $1.8 million to all banquet servers of the St. Regis, including plaintiffs, but limited all future banquet gratuity application to only 92.4% of the banquet bill. According to the plaintiffs, the actual losses to banquet servers are estimated to be higher. (Complaint ¶¶ 99-103).

On March 12, 2008, plaintiffs wrote the Union demanding, among other things, that the room rental case #U05-649 be withdrawn without prejudice and that the Hilton Award be enforced. (Complaint ¶ 104). On March 18, 2008, plaintiffs through counsel wrote a letter to the Union's counsel, the Hotel's counsel and the IC protesting the proposed arbitration; on March 27, 2008, Union's counsel responded in writing. (Cooper Aff., Exhibits "I"). On March 18, 2008, the Union advised plaintiffs that the arbitration was adjourned at the Hotel's request; a new date has not yet been scheduled. (Complaint ¶¶ 105-108).

The St. Regis Tip Pool

Plaintiffs' allege that the Hotel violated the IWA and New York State Labor Law § 196-d by underpaying gratuities owed on banquet functions through a practice of pooling tips for its banquet servers ("Tip Pool"). (Complaint ¶¶ 111-113).

In November 2003, some banquet servers filed complaints against the St. Regis with the New York State Department of Labor ("NYDOL") seeking to have the Tip Pool disbanded.

7

On November 4, 2004, at a conference before the NYDOL, the Hotel argued that Federal law pre-empted State law because the Hotel was a party to a collective bargaining agreement with the Union, noting that it had recently filed for arbitration under the IWA, and that the grievance had already passed the mediation process. The Hotel told the NYDOL that it will rely on Article 47(D)(1) of the IWA at the arbitration claiming that the Tip Pool is a pre-existing practice sanctioned by the 1995 amendment to the IWA. By its arbitration request the Hotel asked for a clarification of its obligation under the IWA to break the Tip Pool. (Complaint ¶¶ 171, 172, 174) (Cooper Aff., Exhibit "B"). The NYDOL did not issue a complaint against the St. Regis.

In or about May 2007, the Union and the St. Regis settled the dispute concerning the Tip Pool. The settlement disbands the Tip Pool as plaintiffs requested, declares that the Tip Pool was lawfully constituted and maintained under the IWA, withdraws the Hotel's grievance and a Union Tip Pool grievance and any related requests, disavows admission of any liability or fact giving rise to liability, disclaims any precedent the settlement may have at other hotels, and refers all disputes over the interpretation of this settlement to the OIC. (Complaint ¶¶ 125, 126, 134, 214) (Cooper Aff., Exhibit "J"). In June 2007, the Hotel announced it would disband the Tip Pool on July 1, 2007. On June 7, 2007, plaintiffs objected to the Union concerning the settlement of the Tip Pool issue. (Complaint ¶ 219). On June 27, 2007, plaintiffs advised the Hotel, in writing, that, among other things, the Tip Pool should be disbanded because it violates the law. On March 16, 2008, the Hotel, pursuant to its Settlement Agreement with the Union, disbanded the Tip Pool. (Complaint ¶¶ 220-226).

Access to IC Awards

On November 27, 2007, plaintiffs requested the immediate establishment and implementation of a procedure whereby they are given unconditional and unrestrictive access to, and copies of, each and every decision by the OIC handed down through the years and addressing any part of the Contract. In response to the plaintiffs' letter, Richard Maroko, Union General Counsel, advised plaintiffs that since there are thousands of decisions, a majority involving hotels and issues completely unrelated or directly affecting the plaintiffs, the Union could not obviously comply with their request. However, Mr. Maroko further advised the plaintiffs that if they had any questions regarding a particular issue or contract clause or award they should contact him. Finally, Mr. Maroko advised the plaintiffs that a system already existed where Grievants involved in arbitration hearings are forwarded copies of the resultant awards. (Complaint ¶¶ 228, 232, 233) (Cooper Aff., Exhibits "M").

Other Unresolved Contract Grievances

The Union has filed grievances and demanded arbitration for a litany of alleged contact violations by the St. Regis, including issues relating to overstaffing, bartending, meetings, breakfasts, receptions and coffee breaks. (Complaint ¶¶ 240, 243).

On June 7, 2007, the Union gave the banquet servers proposals to resolve most of these issues. The banquet servers rejected the offers and their delegates met with the Union extensively on June 27, 2007, where the Union promised to draft new proposals based on the discussions with them. On January 10, 2008, the Union began distributing new proposals to the servers regarding various pending issues. (Complaint ¶¶ 244, 248).

On February 27, 2008, the Union's business agent handed to one of the banquet servers a stack of papers to distribute to each of the other servers. It was a one-page letter dated February 21, 2008, addressed to the Hotel's Manager requesting to set up an appointment between the Union and the Hotel and asking servers to be present in order to resolve pending issues. (Complaint ¶ 255).

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure must be granted if plaintiffs fail to carry their burden to show that the Court may properly exercise subject matter jurisdiction over this action. *In Re Joint E. & S. Dist. Asbestos Litig.*, 14 F. 3d. 726, 730 (2d Cir. 1993). In deciding a motion, the court must accept all of plaintiffs' uncontroverted factual allegations as true. *Scheuer v. Rhodes*, 416 U. S. 232, 236.

Additionally, on a motion to dismiss for lack of subject matter jurisdiction, "the court may consider matters outside the pleadings, such as affidavits, documents and testimony" and the plaintiffs have the ultimate burden of proving the court's jurisdiction. *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *LoPresti v. Andrew Merson*, 00 Civ. 4255 (JGK), 2001 U.S. Dist. LEXIS 16062, at *3-*4 (S.D.N.Y. Sept. 18, 2001) (citations omitted).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure must be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir. 1994). In deciding a motion to dismiss, the court must accept the factual allegations of a well-pleaded complaint. *Los Angeles*

10

*v. Preferred Communications, Inc.*, 476 U.S. 488, 493 (1986).  The motion must be granted if "no relief could be granted under any set of facts that could be proved consistent with the allegations" in the Complaint.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Achtman v. Kirby, McKiernan & Squire, LLP,* 464 F. 3d 328, 337 (2d Cir. 2006).  A court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  *Iqbal v. Hasty,* 490 F. 3d 143, 157-58 (2d Cir. 2007).  To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltds.,* 493 F. 3d 87, 98 (2d Cir. 2007).

While generally a Rule 12(b)(6) motion is based solely on the allegations of the complaint, in deciding the motion, a court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.'  *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004) (citation omitted).  Even if documents are not referred to or incorporated in the complaint, if the parties do not dispute the authenticity of the documents or the documents are central to plaintiffs' claims, the court may treat them as part of the pleadings and dispose of the matter pursuant to Fed. R. Civ. P. 12(b).  *Watterson v. Page,* 987 F.2d 1 (1st Cir. 1993).  Alternatively, if matters outside the pleadings are considered, the motion is converted to one for summary judgment.  *Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002).

11

As demonstrated below, on the basis of the allegations and the undisputed and authentic documents referenced in the Complaint or central to its claims, plaintiffs can allege no set of facts which would entitle them to relief. Their Complaint should, therefore, be dismissed in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFFS LACK STANDING TO CONFIRM THE HILTON AWARD

Plaintiffs contend that they have standing to confirm the Hilton Award because (1) their employer, the St. Regis Hotel, allegedly breached the IWA by failing to comply with the Hilton Award and (2) because the Union violated its duty of fair representation by failing to seek an order confirming the Hilton Award (Complaint ¶¶ 33, 261-262). However, plaintiffs lack the standing to do so.

Employees represented by a union do not have standing to seek confirmation of an arbitration award because the employees are not parties to the collective bargaining agreement or to the arbitration between the union and the employer. *Katir v. Columbia University*, 15 F.3d 23, 24-25 (2d Cir. 1994). The exception to this rule which would allow employees to seek to confirm an award is when the employees state a claim for a section 301/fair representation case; and allege facts in their Complaint sufficient to conclude that the union had, in fact, breached its duty of fair representation. *Martin v. Youngstown sheet & Tube Co., 911 F.2d 1239, 1244 (7*[th] *Cir. 1990); Katir, id*, at 24-25; and *Cleveland v. Porca Co.*, 38 F. 3d 289, 96-97 (7th Cir. 1994) However, the exception does not apply here.

12

Plaintiffs cannot establish standing because the Complaint does not allege facts sufficient to suggest that the Union breached it duty of fair representation as to the enforcement or confirmation of the Hilton Award. The Hilton Award was rendered as a result of a grievance filed by the Union against the Hilton, not the St. Regis. It has been well settled that a court cannot enforce or confirm an arbitration award against a non-party to the arbitration and against someone who did not participate in the arbitration. *District Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229, 240 (S.D.N.Y. 2003); citing *Am. Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F. 2d 674 (2d Cir. 1974). The Hilton Award rendered by IC Ross arose from a dispute between the Union and the Hilton, another hotel and not a party to this litigation. (Complaint ¶ 35).

Plaintiffs admit that in a notice, dated February 3, 2006, the Union advised them that a room rental arbitration case specific to the St. Regis had been filed on their behalf under index No. U05-649; that although it was withdrawn pending the outcome of the Hilton arbitration decision, the Union, on March 6, 2008, reinstated the St. Regis room rental case #U05-649. Plaintiffs' admit that the Union did tell them that it was awaiting for the outcome of the Hilton room rental arbitration before proceeding with the St Regis arbitration because the Hilton decision would have industry-wide implications. (Complaint 50, 62)(Cooper Aff., Exhibit "D").

On October 25, 2007, the Union notified plaintiffs that the Hotel Association had called for an emergency hearing for October 30, 2007, seeking clarification of the Hilton Award. (Complaint ¶ 71)(Cooper Aff., Exhibit "F"). On November 27, 2007, the arbitration of the Hotel Association's clarification grievance was heard by IC Ross. On December 4, 2007, IC Ross

13

rendered his Clarification Award. In that Award, IC Ross held, among other things, that "the Award is based upon Article 47(D)(l) of the IWA, which was enacted in 1995 as a Union benefit circumscribing each Hotel's established practices which remain the starting point of the Award's individual Hotel application. IC Ross retained jurisdiction to decide factual disputes about each individual hotel's pre-1995 practice on a case-by-case basis. Plaintiffs' concede that the arbitration hearing of the Union's #U05-649 arbitration demand filed to determine the St. Regis' pre-1995 practice as per IC Ross' Clarification Award, was initially scheduled to be heard on March 19, 2008, but was adjourned at the Hotel's request *sine die*. (Cooper Aff., Exhibit "H").

After IC Ross issued his Clarification Award, the Union also filed arbitration demands with the OIC against other hotel employers covered by the IWA where the issue of the room rental charges was also in dispute. For example, Plaintiffs acknowledge this in their Complaint as they refer to the Union's dispute with the Mandarin Oriental Hotel. (Complaint ¶¶ 86, 87) (Cooper Aff., Exhibit "G").

Plaintiffs' have no standing to confirm the Hilton Award and the there is no basis for an alleged breach of the duty of fair representation by the Union against the plaintiffs for the failure of the Union to confirm the Hilton Award.. Therefore the Union's motion to dismiss these claims should be granted.

## POINT II

### PLAINTIFFS' SECOND AND FOURTH CLAIMS MUST BE DISMISSED BECAUSE THEY HAVE FAILED TO EXHAUST THEIR REMEDIES UNDER THE COLLECTIVE BARGAINING AGREEMENT

Plaintiffs second Claim alleges that the Union breached its duty to represent them because it failed to confirm the Hilton Award and to take appropriate action regarding the St. Regis' failure to pay gratuities to them out of the room rental fees it charged. By their fourth Claim, plaintiffs contend, notwithstanding the fact as they are aware that the issues are scheduled for arbitration, that the Union breached its duty to represent them because it failed to take appropriate action with regard to such issues as overstaffing, bartending, meetings, breakfasts, receptions and coffee breaks.

In order to maintain an action under Section 301, employees must "at least attempt to exhaust exclusive grievance and arbitration procedures established by the [collective] bargaining agreement." *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564 (1976); *Vaca v. Sipes*, 386 U.S. 171, 183 (1967). "If employees could file suit in federal court without exhausting the remedies established in their collective bargaining agreement, there would be little incentive to pursue those remedies." *Fraternal Order of Police Nat'l Labor Council, USPS No. 2 v. United States Postal Serv.*, 988 F. Supp. 701, 709 (S.D.N.Y. 1997).

The IWA, specifically Section 26 of the IWA, requires that the parties submit to arbitration "*all* complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly ...." (Cooper Aff., Exhibit "B"). This precise arbitration provision has been described by the Second Circuit Court of Appeals as so all-

15

encompassing that "[n]o grievance—either specific or general—is excluded from its broad coverage." *Pitta v. Hotel Ass'n of New York City, Inc.*, 806 F.2d 419, 422 (2d Cir. 1986).

The arbitration provisions in the IWA are broad enough to encompass plaintiffs' claims that the St. Regis breached the IWA. Plaintiffs do not, nor can they, allege that they have exhausted the arbitration procedure of the IWA to seek a remedy for any claimed violation of their rights under the IWA. Indeed, plaintiffs could not allege exhaustion since, as they are aware and as indicated above, the Union has filed grievances and initiated the arbitration process on their behalf. In fact, they have been invited to participate in the arbitrations. The Court is respectfully referred to the exchange of letters by counsel submitted in support of the instant motion (Cooper Aff., Exhibits "L").

Because the proper forum for plaintiffs' second and fourth Claims must be arbitrated, the Court lacks subject matter jurisdiction over them, and the Union's motion pursuant to Rule 12(b)(1) should be granted and those claims dismissed.

## POINT III

### PLAINTIFFS SECOND AND FOURTH CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Where the dates set forth in a pleading show that an action is barred by a statue of limitations, a party may raise the defense in a motion pursuant to Fed. R. Civ. P. 12(b)(6). *Ghartey v. St. John's Queens Hospital*, 869 F.2d 160, 162 (2d Cir. 1989).

Assuming, *arguendo,* that plaintiffs have stated a hybrid 301/duty of fair representation claim against the Union, certain of their claims are barred by the statute of limitations. Under well-settled law, a hybrid claim is governed by a six-month statute of limitations. *DelCostello v.*

16

*Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983); *Ghartey, supra. at* 163. The limitations

period accrues when the plaintiffs knew or reasonably should have known of the union's breach.

*Flanigan v. IBT, Truck Drivers Local 671*, 942 F.2d 824, 827 (2d Cir. 1991). Where the alleged

breach is a union's failure to pursue employees' claims, the statute of limitations is tolled until the

employees knew or should have known of the union's failure, "even if some possibility of non

judicial enforcement remained." *Cohen v. Flushing Hosp. & Med Ctr.*, 68 F. 2d 64, 68 (2d Cir.

1995). Moreover, an employee cannot rely on a union's alleged subsequent conduct to toll the

statute. It is well settled that once a breach of fair representation claim accrues, continued

representation by the union "...cannot be treated as a continuing violation that preclude[s] the

running of the limitation period." *Flanigan, supra.* at 827.

Plaintiffs second Claim alleges that the Union breached its duty to represent them

because it failed to take appropriate action regarding the Hotel's failure to pay them gratuities

out of the Hotel's room rental charges. At paragraphs 44 and 45 of the Complaint, Plaintiffs

allege that sometime in 1998, some banquet servers began complaining to the Union about room

rental charges on banquet meeting events; and that the Union refused to take action. Plaintiffs

were aware of the facts underlying their claims in 1998, when they complained to the Union.

However, they failed to file this action until November 30, 2007, nine years later. Their second

claim for relief is, therefore, barred by the statute of limitations and must be dismissed.

Plaintiffs fourth Claim alleges that the Union breached its duty to represent them because

it failed to take appropriate action with regard to such issues as overstaffing, bartending,

meetings, breakfasts, receptions and coffee breaks; and that these issues were unresolved for

many years, e.g. the coffee break issue has been pending since 1998, and the Union allegedly delivered to them a list of eight grievances in August 2005. (Complaint ¶¶ 49, 240, 242). Plaintiffs did not commence this action until November 30, 2007, when they filed their original *pro se* complaint. Their fourth Claim is, therefore, barred by the statute of limitations and must be dismissed. In *Schermerhorn v. James,* No. 96 Civ. 980 (JSR), 1997 WL 681345, at *2 (S.D.N.Y. Oct. 31, 1997), the Court dismissed plaintiffs complaint where they were aware of and acted upon the material facts that served as the basis of their claim more than six months before filing their complaint. Clearly, plaintiffs were well aware of the facts for many years, relied upon for the basis of the second and fourth Claims and, therefore, they knew or should have known of any inaction on the part of the Union well prior to the six months before the filing of the Complaint. As a result the second and fourth Claims are time barred.

## POINT IV

### PLAINTIFFS ARE NOT ENTITLED TO ACCESS TO ALL IC DECISIONS

Plaintiffs by their fifth Claim brought, pursuant to the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 412, 414, and the Union's duty to fairly represent them, contend that they are "legally entitled to… [A]ll arbitration decisions addressing any part of the Contract at any establishment covered by the contract, are an extension of the Contract…." and "the establishment and implementation of a procedure whereby they 'are given an unconditional and unrestrictive access to all and every decision handed down [through] the years and addressing any part of the Contract.'" (Complaint ¶¶ 3, 231, 232).

29 U.S.C. § 414 provides:

18

> It shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are *directly affected by such agreement*, ... such officer shall maintain at the principal office of the labor organization of which he is an officer copies of any such agreement made or received by such labor organization, which copies shall be available for inspection by any member or by any employee *whose rights are affected by such agreement.* (Emphasis supplied)

The language of the statute is clear; it only requires that unions provide a copy of collective bargaining agreements to their members and employees if there rights are directly affected by that agreement. There is nothing in the law that requires unions to give their members unfettered access to every arbitration decision "handed down" through the years. *Tanzillo v. Local Union 617, Intern. Broth. of Teamsters,* (3d Cir. 1985), 769 F.2d 140, (Union members are not entitled, under this section, to copy of contract between union and company which was not members' employer).

The Complaint clearly shows that the plaintiffs have the IWA, they have been relying upon its terms and conditions to press their claims and grievances. Also, there is no allegation in the Complaint in which they claim that the Union denied them access to the IWA.

Moreover, the Complaint demonstrates that IC decisions directly affecting plaintiffs have been provided to them. At paragraph 71, plaintiffs admit that the Hilton Award #2007-40 was hand delivered to them; at paragraph 93, plaintiffs admit that the Clarification [Association] Award #2007-85R was delivered to them. At paragraph 213, they admit that the Tip Pool Settlement was hand delivered to them.

19

Additionally, they also admit that in response to their request, the Union's General Counsel, Richard Maroko, responding on behalf of the Union, advised them that because throughout the years there have been literally thousands of decisions, a majority involving hotels and issues wholly unrelated or directly affecting the plaintiffs, the Union could not obviously comply with their request. However, if they had any questions, regarding any particular issue or contract clause or award they should contact him. Mr. Maroko also stated that a system already existed where Grievants involved in arbitration hearings are forwarded copies of the resultant awards. (Complaint ¶¶ 228, 232, 233) (Cooper Aff., Exhibits "M").

Counsel also enclosed for plaintiffs additional copies of the IWA, the Hilton Award and the Clarification Award.

It is clear that because the Union did not breach its duty to fairly represent plaintiffs, their fifth Claim should be dismissed.

### POINT V

### PLAINTIFFS ARE NOT ENTITLED TO HAVE ARBITRATIONS TRANSCRIBED OR TAPE RECORDED

In their fifth Claim for relief, plaintiffs also seek an order from the Court directing that arbitrations be either transcribed or tape recorded.

The long established policy in the hotel industry prohibits use of a reporter in arbitration hearings unless all parties to the arbitration consent to the use has been consistently upheld by the OIC. In award #95-106, dated July 5, 1995, IC Herbert B. Evans denied the request of the Employer, the Roosevelt Hotel, to use a court reporter in connection with the arbitration at the OIC. In the *Matter of the Roosevelt Hotel v. New York Hotel & Motel Trades Council AFL-CIO,*

20

95 Civ. 5016 (1996)(AGS), (S.D.N.Y. March 11, 1996), The Honorable Allen G. Schwartz, a Judge of this Court, in a proceeding seeking to confirm IC Evans' award #95-106, upheld the hotel industry's policy. Judge Schwartz quoted IC Evans in #86-104, dated June 25, 1986, with regard to the same issue, i.e. the use of a court reporter. See page 22, Line 4 -Line 19, page 224 of transcript. Similarly, in award #95-113, IC Evans denied the request of the Employer, the Hotel Pennsylvania, to use a court reporter. Copies of IC Evans' awards and the written transcript of Judge Schwartz's ruling is submitted herewith. (Cooper Aff., Exhibit "K").

Plaintiffs' request for an order directing transcriptions or tape recordings of arbitrations should be denied, and their fifth Claim dismissed in its entirety.

**POINT VI**

**PLAINTIFFS SIXTH CLAIM FOR RELIEF IS
PREEMPTED BY FEDERAL LABOR LAW**

By their sixth Claim "[P]laintiffs seek the right, pursuant to Section 196(d) of the New York State Labor Law to have this court declare that the Union has violated its duty of fair representation and the Hotel has violated the IWA...regarding the fact that by contract the Hotel was obligated to pay full contract gratuities ...." (Complaint ¶ 278).

It is well-settled that Section 301 provides federal courts with jurisdiction over violations of collective bargaining agreements and authorizes the courts to fashion "a body of federal law for the enforcement of these collective bargaining agreements...." *Textile Workers v. Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957). State law causes of action for violation of collective bargaining agreements are completely displaced by federal law under Section 301 and "[s]tate law is...'preempted' by § 301 in that the federal law fashioned by the courts under

21

Section 301 governs the interpretation and application of collective bargaining agreements." *United Steelworkers of America v. Rawson*, 495 U. S. 362, 368 (1990).

Although plaintiffs formulate their claim as being based on state labor law, it is more than obvious that it is based on the IWA, the collective bargaining agreement between the Union and the Hotel; therefore, their claim is clearly preempted by Section 301.   *United Steelworkers of America v. Rawson*, 495 U. S. 362, 368 (1990).

As we have stated above, before bringing an action under Section 301 of the LMRA, an employee must exhaust any arbitration procedures provided by the bargaining agreement. *Dougerhty v. American Tel. 7 Tel Co.*, 902 F. 2d 201 (2d Cir. 1990).  The plaintiffs allege in the Complaint that the Hotel has violated Section 196-d by establishing and maintaining the Tip Pool; plaintiffs wanted the Tip Pool disbanded. (Complaint ¶¶ 111 -113). They claim that some servers filed complaints with the NYDOL seeking to disband the Tip Pool under Section 196-d. Plaintiffs concede that the Hotel argued before the NYDOL that Federal law pre-empted State law noting that it had recently filed for arbitration and that the grievance had already passed the mediation process. The St. Regis stated that at the arbitration it would rely on Article 47(D)(1) of the IWA claiming that the Tip Pool is a pre-existing practice sanctioned by the 1995 amendment to the IWA.  By its arbitration request, the Hotel asked for a clarification of its obligation under the IWA to break the Tip Pool.  (Complaint ¶¶ 171, 172, 174).

Plaintiffs also admit that in or about May 2007, the Union and the Hotel settled the Tip Pool dispute, wherein, among other things, they agreed that the Tip Pool would be disbanded.   In June 2007, the St. Regis announced it would disband the Tip Pool on July 1, 2007.  On June 7, 2007, plaintiffs objected to the Union concerning the settlement of the Tip Pool issue. (Complaint ¶ 219).  On June 27, 2007, plaintiffs advised the Hotel, in writing, that, among other

22

things, the Tip Pool should be disbanded.   On March 16, 2008, the Hotel, pursuant to its

Settlement Agreement with the Union, disbanded the Tip Pool.  (Complaint ¶¶ 220-226) (Cooper

Aff., Exhibit "J").   The relief plaintiffs sought from the NYDOL is the relief they received

through the arbitration procedures set forth in the IWA, i.e. the disbanding of the Tip Pool.

Plaintiffs' Sixth Claim for Relief should be dismissed.   In the *United Steelworkers of America v.*

*Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, the United States Supreme Court held that a

union and an employer have the power to settle a grievance dispute arising under their contract.

**POINT VII**

**THE UNION DID NOT VIOLATE
ITS DUTY OF FAIR REPRESENTATION**

Plaintiffs claim that the Union breached its duty of fair representation by (i) failing to

take appropriate actions to confirm the Ross [Hilton] Award regarding room rentals; (ii) failing

to take appropriate actions to represent its members regarding the Tip Pool; (iii) failing to take

appropriate actions to represent its members regarding overstaffing, bartending, meetings,

breakfasts, receptions and coffee breaks; and (iv) by failing to allow them the to have unfettered

access to all IC decisions.

To establish a breach of duty of fair representation there must be a two-part showing.  First,

it must be shown that the Union's actions have been arbitrary, discriminatory or in bad faith.

*Kavowras v. New York Times Co.*, 328 F.3d 50, 54 (2d Cir. 2003) (quoting *Vaca v. Sipes*, 386 U.S.

23

171, 190 (1967)).    "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the unions' actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."    A showing of bad faith requires a showing of fraudulent, deceitful or dishonest action."    *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001). Second, in addition to proving the union acted in an arbitrary, discriminatory or in bad faith manner, plaintiffs must show that the Union's actions "seriously undermined the integrity of the arbitral process."    *Hines v. Anchor Motor Freight,* Inc., 424 U.S. 554, 567 (1976).

In the instant case, plaintiffs by their second and fourth claims for relief contend that because the Union did not confirm the Hilton Award, and because it failed to process the other grievance issues, it violated its duty of fair representation.    However, as we demonstrated above, although the Union did not move to confirm the Hilton Award, which was between the Hilton and the Union, the Union has filed for arbitration against the St. Regis re the room rental issue.    The Union has also filed for arbitration for the other grievance issues, which are proceeding accordingly; which Plaintiffs are aware and have been invited to participate.

Plaintiffs also claim that, notwithstanding the fact that the Union accomplished exactly the relief they sought, i.e., the disbanding of the Tip Pool, the Union's settlement of the Tip Pool grievance with the Hotel, is a breach of its duty of fair representation. The courts have historically held that a mutually acceptable grievance settlement between an employer and a union cannot be challenged by an employee under §301 on the ground that the parties exceeded their contractual powers in making the settlement.    See *United Steelworkers of America, supra*, at 581, the Court held that a union and employer have the power to settle a grievance dispute arising under their contract.

24

Concerning plaintiffs claim that the Union breached its duty of fair representation when it failed to provide them with copies of all IC decisions which they believed was their legal right, as we demonstrated above, they have no such right. Because the language of the statute is clear in that it only requires that unions provide a copy of collective bargaining agreement to their members and employees with who are directly affected by that agreement. There is nothing in the law that requires unions to give their members unfettered access or copies to every arbitration decision "handed down" through the years.

The Union has not breached its duty to plaintiffs of fair representation, their claims should be dismissed.

## CONCLUSION

For the reasons and upon the authority set forth above, the Union's motion to dismiss the Complaint pursuant to FRCP Rules 12(b)(1) and (6) should be granted and judgment entered in favor of the Union, together with whatever further relief this Court deems just and proper.

Dated: New York New York
      May 12, 2008

Respectfully submitted,

PITTA & DREIER, LLP

By: _____
    Bruce J. Cooper (BC 2764)
499 Park Avenue
New York, New York 10022
(212) 652-3890

Of Counsel:
Michael J. D'Angelo (MD 3030)

25

PITTA & DREIER LLP
Attorneys for Defendant New York Hotel &
Motel Trades Council, AFL-CIO
499 Park Avenue
New York, New York 10022
(212) 652-3890

Bruce J. Cooper (BC 2764)
Michael J. D'Angelo (MD 3030)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH BEJJANI, HENRY BOLEJSZO,                    :
ALAIN BREDA, AHMAD BULLA, VIRGIL                   :
COSTACHE, GEOFFREY HABERER, RUHEL                  :
HASSAN, RICKY GARCIA, ABDELKABIR                   :
KAHTANE, MOHAMMED KHAMFRI,                         :
KATHY KINKY, STYLIANOS LOUKISSAS,                  :
ERICH LUNZER, JAIRO MARTINEZ,                      :        07-Cv-10729 (HB) (DCF)
EDILBERTO MORCOS, JOHN O'CONNOR,                   :
AART VAN DERLAAN, OSCAR FLORES, and                :
ROBERTO ZEGARRA,                                   :        **AFFIDAVIT OF SERVICE**
                                                   :
                    Plaintiffs,                    :
                                                   :
-against-                                          :
                                                   :
MANHATTAN SHERATON CORPORATION                     :
d/b/a ST. REGIS HOTEL, and NEW YORK
HOTEL and MOTEL TRADES COUNCIL,
AFL-CIO,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK      )
                              s.s.
COUNTY OF NEW YORK   )

        MICHELLE WILLIAMS, being duly sworn, deposes and says:

        That deponent is not a party to this action, is over eighteen years of age and resides in
North Brunswick, New Jersey.

That on the **12th day of May, 2008** deponent served by first class mail the **MEMORANDUM OF LAW** thereof upon:

Michael Starr, Esq.
875 Third Avenue
New York, New York 10022
*Attorneys for Defendant Manhattan*
*Sheraton Corporation d/b/a St. Regis Hotel*

Robert N. Felix, Esq.
Law Office of Robert N. Felix
11 Broadway, Suite 400
New York, New York 10004
*Attorney for Plaintiffs*

Michelle Williams

Sworn to before me this
12th day of May 2008

Notary Public

BRUCE J. COOPER
Notary Public, State of New York
No. 4502270
Qualified in Rockland County
Commission Expires September 30 2009