UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
JOSEPH BEJJANI, et al.,

                              Plaintiffs,

              - against -                                    07 Civ. 10729 (HB) (DCF)

MANHATTAN SHERATON CORPORATION d/b/a ST.
REGIS HOTEL and NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO,

                              Defendants.
----------------------------------------------------------------------x


**DEFENDANT MANHATTAN SHERATON CORPORATION'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION**
**<u>TO DISMISS THE SECOND AMENDED COMPLAINT</u>**


                              Michael Starr, Esq.
                              Christine M. Wilson, Esq.
                              Hogan & Hartson L.L.P.
                              875 Third Avenue
                              New York, New York 10022
                              (212) 918-3000

                              *Attorneys for Defendant Manhattan*
                              *Sheraton Corporation d/b/a St. Regis Hotel*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND......................................................................................3

ARGUMENT...........................................................................................................7

Point I        THE COURT LACKS SUBJECT MATTER JURISDICTION TO
               CONFIRM THE HILTON AWARD IN AN ACTION AGAINST
               THE ST. REGIS AND PLAINTIFFS LACK STANDING TO SEEK
               CONFIRMATION. ....................................................................................7

     A.        This Court Lacks Subject Matter Jurisdiction Over Plaintiffs'
               Confirmation Claim..................................................................................7

     B.        Plaintiffs As Individual Employees Lack Standing to Confirm the
               Hilton Award. ...........................................................................................9

Point II       PLAINTIFFS FAIL TO STATE A CLAIM AS TO THE
               MAINTENANCE OF A TIP-POOL BECAUSE THE
               SETTLEMENT AGREEMENT IS A COMPLETE DEFENSE. ...............11

     A.        Because the Union Settled The Tip-Pooling Grievance Before
               Concluding Arbitration, Plaintiffs Cannot Assert a Claim Against the
               St. Regis...................................................................................................12

     B.        Delayed Implementation of the Settlement Agreement Does Not Give
               Plaintiffs A Claim.....................................................................................18

Point III      JUDICIAL ACTION AS TO THE "UNRESOLVED CONTRACT
               ISSUES" IS PREMATURE PRECISELY BECAUSE THEY ARE
               UNRESOLVED. .......................................................................................20

Point IV       BECAUSE PLAINTIFFS HAVE FAILED TO JOIN ALL ST.
               REGIS BANQUET SERVERS, WHO ARE NECESSARY
               PARTIES TO THIS ACTION, THE COMPLAINT MUST BE
               DISMISSED..............................................................................................21

Point V        DUE TO THE EXPRESS STATUTORY EXEMPTION FOR
               "BANQUET . . . FUNCTIONS," THE MANDATORY TIP POOL
               DID NOT VIOLATE NEW YORK STATE LABOR LAW. ....................23

CONCLUSION .......................................................................................................24

i

TABLE OF AUTHORITIES

<u>Cases</u>

*Acosta v. Potter*,
    410 F. Supp. 2d 298 (S.D.N.Y. 2006) ................................................ 12, 13, 16, 18

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
    499 U.S. 65 (1991) ................................................................... 11, 14, 15, 16

*Arnold v. ABC, Inc.*,
    No. 06 Civ. 1747 (GBD), 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) ................................. 4

*Beckman v. U.S. Postal Service*,
    79 F.Supp. 2d 394 (S.D.N.Y. 2000) ...................................................... 16

*Bell Atl. Corp. v. Twombly*,
    -- U.S. --, 127 S.Ct. 1955 (2007) ..................................................... 16, 20

*Bey v. Welsbach Elec. Corp.*,
    01 Civ. 2667 (LAP), 2001 WL 863419 (S.D.N.Y. July 30, 2001) .......................... 18, 19

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005) ............................................................ 4

*Carrion v. Enterprise Ass'n, Metal Trades, Local 638*,
    227 F.3d 29 (2d Cir. 2000) ......................................................... 10, 12

*Cecil's Inc. v. Morris Mech. Enter.*,
    735 F.2d 437 (11th Cir. 1984) .......................................................... 8

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ............................................................ 4

*Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers*
    *Union Local 812, Intern. Broth. of Teamsters*,
    242 F.3d 52 (2d Cir. 2001) ............................................................. 7

*Conn Tech Development Co. v. University of Connecticut Educ. Prop. Inc.*,
    102 F.3d 677 (2d Cir. 1996) ........................................................... 7

*Crouse-Hinds Co. v. InterNorth, Inc.*,
    634 F.2d 690 (2d Cir. 1980) ........................................................... 22

*De Costello v. Intern. Broth. of Teamsters*,
    462 U.S. 151 (1983) ............................................................... 12, 13, 19

*District Council No. 9 v. APC Painting, Inc.*,
    272 F. Supp. 2d 229 (S.D.N.Y. 2003) ................................................... 7, 8

*Dougherty v. American Tel. and Tel. Co.*,
    902 F.2d 201 (2d Cir. 1990) ......................................................... 19, 23

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) .................................................................. 17

*Employers' Surplus Lines Ins. Co. v. Global Reinsurance Corporation*,
    No 07 Civ. 2521(HB), 2008 WL 337317 (S.D.N.Y. Feb. 6, 2008)..........................7

*Farkas v. Ellis*,
    780 F. Supp. 1013 (S.D.N.Y. 1992) ..................................................................20

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ..............................................................................17

*Fraternal Order of Police v. U.S. Postal Service*,
    988 F. Supp. 701 (S.D.N.Y. 1997) ..................................................................20

*Giron v. Balcor Co.*,
    No. 97 Civ. 5065(DLC), 1998 WL 274286 (S.D.N.Y. May 27, 1998)................20

*Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*,
    960 F. Supp. 701 (S.D.N.Y. 1997) ..................................................................22

*Hartnett v. Wade-Mark Eleven, Inc.*,
    156 A.D.2d 559, 549 N.Y.S.2d 69 (2d Dep't 1989) ........................................23

*Hotel Ass'n of Washington, D.C. v. Hotel Employees Union Local 25*,
    963 F.2d 388 (D.C. Cir. 1992) .........................................................................8

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*,
    675 F. Supp. 146, 153 (S.D.N.Y. 1987) ...........................................................8

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007) ...........................................................................17

*Jonesfilm v. Lion Gate Intern.*,
    299 F.3d 134 (2d Cir. 2002) ...........................................................................21

*Katir v. Columbia University*,
    15 F.3d 23 (2d Cir. 1994) ...............................................................................10

*Kozera v. Westchester-Fairfield Chapter of Nat'l Elec. Contractors Ass'n*,
    909 F.2d 48 (2d Cir. 1990) .............................................................................18

*Luckett v. Bure*,
    290 F.3d 493 (2d Cir. 2002) .............................................................................9

*Maddalone v. Local 17, United Broth. of Carpenters and Joiners of America*,
    152 F.3d 178 (2d Cir. 1998) ...........................................................................13

*Martin v. Youngstown Sheet & Tube Co.*,
    911 F.2d 1239 (7th Cir. 1990) .....................................................................9, 10

*Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*,
    No. 92 Civ. 7916 (SWK), 1993 WL 362391 (Sept. 14, 1993) .............................8

*Ryan v. Volpone Stamp Co., Inc.*,
    107 F. Supp. 2d 369 (S.D.N.Y. 2000) .............................................................21

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70, N.Y.S.2d 83 (2008)..............................................................23, 24

*Spellacy v. Airline Pilots Association-International,*
    156 F.3d 120 (2d Cir. 1998) ........................................................................ 16

*Tomney v. International Center for Disabled,*
    357 F. Supp. 2d 721 (S.D.N.Y. 2005) ................................................... 12, 17

*United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.,*
    484 U.S. 29 (1987) ......................................................................................... 7

*Vaca v. Sipes,*
    386 U.S. 171 (1967) ................................................................................ 13, 14

*Vera v. Saks & Co.,*
    424 F. Supp. 2d 694 (S.D.N.Y. 2006) .................................................... 19, 20

*Vosch v. Werner Continental,*
    734 F.2d 149 (3d Cir. 1984) ............................................................ 9, 10, 11

*Weinberg v. Herzog,*
    07 Civ. 18 (CM), 2007 WL 946833(S.D.N.Y. Mar. 27, 2007) .................. 21, 22

*White v. White Rose Food,*
    237 F.3d 174 (2d Cir. 2001) .................................................................. 11, 12

*Wright v. Universal Maritime Service Corp.,*
    525 U.S. 70 (1998) ................................................................................ 19, 23

*Young v. U.S. Postal Serv.,*
    907 F.2d 305 (2d Cir. 1990) ....................................................................... 12

## Statutes

29 U.S.C. § 185 ...................................................................................................... 11

9 U.S.C. § 10(a)(4) .................................................................................................. 6

Defendant Manhattan Sheraton Corporation owns, *inter alia*, the St. Regis Hotel in New York City.  It submits this memorandum of law in support of its motion, pursuant to Rules 12(b)(1), 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure, to dismiss in its entirety Plaintiffs' Second Amended Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiffs in this action are a group of disgruntled banquet servers at the St. Regis Hotel who, it seems, will not take "yes" for an answer.  The Plaintiffs believed that the long-standing practice of the St. Regis to pool tips from banquet functions to be shared among servers violated the labor agreement that existed between the St. Regis and the union representing Plaintiffs, among other St. Regis workers.  Both the St. Regis and that union filed grievances with respect to this matter, which led to an arbitration hearing.  That hearing was suspended, however, and the grievances withdrawn with prejudice when a settlement agreement was reached disbanding the mandatory tip pool to which the Plaintiffs had objected.  Despite getting what they had asked for, Plaintiffs sued.

The Plaintiffs also object to what they perceive to be a "dilut[ion]" of their gratuity-based compensation because, while the St. Regis collects and distributes to all banquet servers a 16% gratuity on food and beverage charges to banquet customers, it does not similarly charge banquet customers for a gratuity on public room rental fees that are sometimes charged for some banquet functions.  A similar practice was challenged by Plaintiffs' union in an arbitration brought against the Hilton Hotel.  Following an arbitration award in that matter that was favorable to the servers' position, the union commenced an arbitration against the St. Regis

---

[1]     At pre-trial conference on March 20, 2008, the Court exempted defendants from its standing rule that a single motion and brief be filed in multi-defendant cases and allowed each defendant to file its own motion to dismiss.

asserting the same grievance and seeking the same result.  Thus, the Plaintiffs, again, got what they sought and all they could reasonably have asked for, which was a hearing before a neutral arbitrator as to their asserted interpretation of the applicable labor agreement as it applied to the St. Regis.  Yet, once again, Plaintiffs complained.

The purpose of this federal lawsuit from Plaintiffs' point of view is to nullify a settlement agreement that the St. Regis reached in good faith negotiations with the union that represents them and to impose on the St. Regis an arbitration award that their union had obtained against someone else in a proceeding to which the St. Regis was not even a party.  If ever there were a topsy-turvy labor-law complaint, this is it.

In a nutshell, all of the grievances asserted by Plaintiffs in this lawsuit are matters that, under federal labor law, are required to be resolved through the grievance and arbitration mechanisms provided by the collective bargaining agreement governing their employment.  Their attempts to bypass and circumvent those mechanisms, by whatever rationale, needs to be rejected by this Court.

The only claim asserted by the Plaintiffs that is properly in this forum is the alleged violation of Section 196-d of the New York State Labor Law, and that claim is without merit as a matter of law.  Plaintiffs construe the statute as prohibiting the pooling of tips from banquet functions without each server's individual consent.  This ignores, however, that the statute in question contained a special exemption for "banquet . . . functions," and that exemption, as recently construed by New York State's highest court, actually authorizes for hotels, like the St. Regis, precisely the mandatory tip-pooling practice that Plaintiffs decry.

For all these reasons, the Complaint as to the defendant employer should be dismissed in its entirety.

**FACTUAL BACKGROUND**

The relevant facts as stated in the Second Amended Complaint dated April 7, 2008 ("*Compl.*"), which are presumed to be true for the purpose of this motion, may be summarized as follows:

The IWA

Plaintiffs are some (but not all) of the banquet servers at the St. Regis Hotel (the "*St. Regis*" or the "*Hotel*") and are members of the New York Hotel & Motel Trades Council, AFL-CIO (the "*Union*"). (Compl., ¶ 6.) Plaintiffs are employed by the Hotel pursuant to the terms and conditions of a collective bargaining agreement between the Hotel Association of New York City, Inc. (the "*Hotel Association*"), which is a hotel trade association, and the Union. (Compl., ¶¶ 1 & 6.) That labor agreement is commonly referred to as the "*Industry-Wide Agreement*" or "*IWA.*" Article 26 of the IWA provides that any unsettled dispute between the parties shall proceed to final and binding arbitration before the Office of the Impartial Chairman. (Compl., ¶¶ 30 & 31.)

The Hilton Award and Room Rental Charges

Under Article 26 of the IWA, a matter between the Union and the Hilton Hotel proceeded to arbitration and was decided by Impartial Chairman ("*IC*") Philip Ross, who issued his arbitration award on August 23, 2007 (the "*Hilton Award*"). (Compl., ¶ 38.) The St. Regis was not a party to this arbitration. (Compl., ¶ 35.) The Hilton Award addressed whether the IWA required that gratuities paid by the Hilton to banquet waiters and captains be based not only on food and beverage charges for banquets but also on room rental charges that the Hilton charged its customers in conjunction with its banquet functions. (Compl., ¶ 36.) In the Hilton Award, the IC sustained the banquet servers' grievance but did not fashion any specific remedy; rather, he directed the parties to meet and determine any income lost as a result of the Hilton's

violation. (Compl., ¶ 38.)[2]  On December 4, 2006, at the request of the Hotel Association, the IC

issued a supplemental decision stating that the Hilton Award had "industry-wide application"

(the "*Clarification Award*") but also stating that the "starting point" for the "application" of

Article 47(D)(1) to any particular employer was "each Hotel's established practices" as of 1995,

which was when that particular provision was adopted. (Compl., ¶ 94.)[3]

As of at least 1998, the St. Regis charged customers for room rental. (Compl., ¶

44.)  On February 3, 2006, the Union, pursuant to the IWA, brought a grievance against the St.

Regis regarding gratuities on the room rental charge. (Compl., ¶ 50.)  One of the issues involved

Article 47(D)(1) of the IWA, which, on some interpretations, links the manner in which

gratuities are calculated and collected to the hotel's pre-established practices as they existed in

1995. (Compl., ¶ 53.)  The Union elected to delay bringing the grievance with the St. Regis to

arbitration in order for the Hilton matter to conclude, which it did in December of 2007.

(Compl., ¶¶ 62 & 93.)  The Union reinstated its grievance shortly thereafter, and a hearing is

pending. (Compl., ¶¶ 99-100 & 108.)

---

[2]     The Hilton Award is attached to the Declaration of George Greene, dated May 12, 2008 ("*Greene Declaration*" or "*Greene Decl.*"), as Exhibit A.  When a document, such as the Hilton Award, is referenced in a complaint so as to have become integral to the plaintiffs' claim, the court may consider that document on a motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Additionally, the court does not have to accept the Complaint's "description of [the Award's] terms, but may look to the [Award] itself." *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (on a motion to dismiss, a court "is not limited solely to the allegations in the complaint . . . [, but] [w]here a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint, [a court] may consider its contents even if it is not formally incorporated by reference") (internal quotations omitted); *Arnold v. ABC, Inc.*, No. 06 Civ. 1747 (GBD), 2007 WL 210330, at *1, n.2 (S.D.N.Y. Jan. 29, 2007) (noting that court may "consider a document [in conjunction with a motion to dismiss] if the plaintiff 'relies heavily upon its terms and effect,' rendering 'the document 'integral' to the complaint'") (internal citations omitted).

[3]     The Clarification Award is attached to the Greene Declaration as Exhibit B.  The Clarification Award is integral to the Complaint, and Plaintiffs relied on its terms and effect in crafting the Complaint. The court's consideration of the Clarification Award thus does not convert this motion to dismiss to one for summary judgment. *See* note 2, *supra*.

4

<u>The Tip Pool Controversy</u>

Dating back to at least 1991, shortly after the St. Regis reopened following renovations, all St. Regis banquet servers were members of a "tip pool" (also termed the "kitty"), through which gratuities received from a banquet function were distributed to the banquet servers. (Compl., ¶¶ 114, 144 & 179.)  Beginning in or about October 2003, certain plaintiffs began to express a wish to exit the tip pool, including in a petition submitted to the St. Regis and also through a complaint to the New York State Department of Labor. (Compl., ¶¶ 159 & 167.) Not all banquet servers wished to exit the tip pool. (Compl., ¶ 178.) Pursuant to the IWA, the St. Regis filed for arbitration in late 2005 to resolve the matter. (Compl., ¶ 171.) This arbitration process spanned the next several years, including hearings, adjournments, meetings, arguments, and other exchanges. (Compl., ¶¶ 180, 182, 204 & 206.)

Ultimately, the St. Regis and the Union settled the matter by agreement dated May 29, 2007 (the "*Settlement Agreement*"). (Compl., ¶ 213.)[4] The Settlement Agreement provided that the tip pool (or "kitty," as it was called) would be disbanded; that grievances related to the tip pool would be withdrawn; that the tip pool had been lawfully maintained, and that all disputes over the interpretation of the Settlement Agreement would be referred to the Office of the Impartial Chairman. (Compl., ¶ 214.) The Settlement Agreement also linked each server's gratuity for a function with the number of "covers" – or persons – assigned to the server at that function. (Compl., ¶ 216.) In addition, the Settlement Agreement gave the St. Regis the authority to establish "passing rules" affecting when servers could "pass" on a function they were assigned to (*i.e.*, elect not to accept the assignment). The rules were intended to prevent

---

[4] A copy of the Settlement Agreement is attached to the Greene Declaration as Exhibit C.

servers from gaming the system by "passing" on lower-gratuity events (like breakfasts) in favor of higher-gratuity events (like sit-down dinners).

On June 27 and 28, 2007, plaintiffs wrote separately to the St. Regis and the Union objecting to the Settlement Agreement. (Compl., ¶¶ 221-23.) Plaintiffs reiterated their position in a letter to the St. Regis on July 23, 2007. (Compl., ¶ 224.) On November 30, 2007, plaintiffs filed the Complaint in this matter. During this period, the Hotel and Union delayed implementing the Settlement Agreement, but ultimately did so on March 16, 2008. (Compl., ¶¶ 225-26.)

Other Issues Under the Collective Bargaining Agreement

Plaintiffs also question the handling of other issues, including overstaffing, bartending, meetings, breakfasts, receptions and coffee breaks. (Compl., ¶ 240.) In June 2007, the Union presented the banquet servers with a proposed settlement to resolve most of these issues, which the servers rejected. (Compl., ¶ 244.) Discussions regarding possible settlement proceeded through late 2007 into early 2008, with plaintiffs rejecting a proposal in January. (Compl., ¶¶ 245, 248-249.) The St. Regis and Union continue to take steps to resolve these issues. (Compl., ¶ 255.) As issues governed by the IWA, and as provided by the IWA, if the parties cannot resolve the matter, it will proceed to arbitration. (Compl., ¶¶ 30 & 31.) There is no allegation in the complaint that the Union has failed or refused to bring these issues to arbitration before the Office of the Impartial Chairman as permitted and required by the IWA.

**ARGUMENT**

**Point I**

**THE COURT LACKS SUBJECT MATTER JURISDICTION TO
CONFIRM THE HILTON AWARD IN AN ACTION AGAINST THE
ST. REGIS AND PLAINTIFFS LACK STANDING TO SEEK CONFIRMATION.**

As a purported First Claim For Relief, plaintiffs seek to confirm the Hilton Award

in their lawsuit against the St. Regis. Say what one will about the St. Regis, it has never been

confused with a Hilton hotel. Yet arbitration awards can only be confirmed against defendants

who were party to the arbitration proceeding. Moreover, there can be no conceivable breach by

the Union of its duty of fair representation in its decision to enforce the Hilton Award by an

arbitration against the St. Regis before the Office of the Impartial Chairman, rather than by a

lawsuit to confirm. That being so, plaintiffs lack standing to seek confirmation of the Hilton

Award.[5]

**A.    This Court Lacks Subject Matter Jurisdiction
Over Plaintiffs' Confirmation Claim.**

"Case law makes clear that a court cannot confirm an arbitration award against a

party *who did not participate in the arbitration*." *District Council No. 9 v. APC Painting, Inc.*,

272 F. Supp. 2d 229, 240 (S.D.N.Y. 2003) (emphasis added). Rather, the general rule in New

---

[5]    Because IC Ross in the Hilton Award "retain[ed] jurisdiction" while the parties negotiated and
agreed upon a backpay remedy, it is not at all clear that the Hilton Award is "final and definite" and,
therefore, may be incapable of confirmation on that independent ground as well. *See* Federal Arbitration
Act ("*FAA*"), 9 U.S.C. § 10(a)(4); *Conn Tech Development Co. v. University of Connecticut Educ. Prop.
Inc.*, 102 F.3d 677, 686 (2d Cir. 1996) ("An award is mutual, definite and final if it resolves all issues
submitted to arbitration and determines each issue fully so that no further litigation is necessary to finalize
the obligations of the parties") (internal quotations omitted); *Employers' Surplus Lines Ins. Co. v. Global
Reinsurance Corporation*, No 07 Civ. 2521(HB), 2008 WL 337317, at * 6 (S.D.N.Y. Feb. 6, 2008) ("an
award disposes of a separate and independent claim only if it resolves both liability and damages").
While the substantive provisions of the Federal Arbitration Act are not automatically applicable in cases
brought under Section 301 of the Labor Management Relations Act, "federal courts have often looked to
the Act for guidance in labor arbitration cases." *United Paperworkers Intern. Union, AFL-CIO v. Misco,
Inc.*, 484 U.S. 29, 41 n.9 (1987); *see also Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and
Brewery Workers Union Local 812, Intern. Broth. of Teamsters*, 242 F.3d 52, 54-55 (2d Cir. 2001).

York is that "a final award of arbitration [is] binding *only upon parties to the arbitration [proceeding].*" *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, No. 92 Civ. 7916 (SWK), 1993 WL 362391, at *7 (Sept. 14, 1993) (*citing Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 675 F. Supp. 146, 153 (S.D.N.Y. 1987)) (emphasis added). While occasionally courts have confirmed awards against non-parties upon a showing that they are a successor or alter ego of the actual party to the arbitration proceeding, *see Faberge USA, Inc.*, 1993 WL 362391, at *7; *APC Painting, Inc.*, 272 F. Supp. 2d at 237, or – in the context of a commercial dispute – where the non-party had previously agreed to indemnify the arbitration party, *see, e.g., Cecil's Inc. v. Morris Mech. Enter.*, 735 F.2d 437, 439 (11th Cir. 1984), even then enforcement against a non-party is heavily disfavored when it would be "manifestly unfair or unreasonable." *Faberge USA, Inc.*, 1993 WL 362391 at *8.

      This Court lacks subject matter jurisdiction to confirm the Hilton Award against the St. Regis, first and most fundamentally, because the St. Regis was not a party to the arbitration proceedings between the Union and Hilton. The Amended Complaint does not allege facts even suggesting that the St. Regis is an alter ego or successor of the Hilton. Nor is it relevant that the St. Regis and the Hilton Hotel are both party to the IWA. As a matter of law, a prior arbitration does not necessarily bind a subsequent arbitrator even with respect to the same provisions of the same multiemployer labor agreement; rather, the precedential effect of a prior award in such circumstances "can be determined only by reference to the agreement itself" and the answer to that question "falls . . . in the first instance" to the arbitrator, not the court. *See Hotel Ass'n of Washington, D.C. v. Hotel Employees Union Local 25*, 963 F.2d 388, 391 (D.C. Cir. 1992).

Moreover, confirmation of the Hilton Award in a lawsuit against the St. Regis would surely be "manifestly unfair and unreasonable." The Clarification Award, which purported to give the Hilton Award "industry-wide application," expressly stated that each hotel's particular established practices as of 1995, when the provision was agreed to, is the "starting point" for "the Award's individual Hotel application." (St. Regis Exh. B at 2.)[6] The St. Regis was not given an opportunity in the Hilton arbitration to present evidence of its own practices regarding room rentals or otherwise offer its own individual defenses. (Greene Decl., ¶ 4).[7] In fact, there was no evidence before the arbitrator during the hearings leading up to the Hilton Award as to what the St. Regis' practices were. (*Id.*, ¶ 5) The Complaint does not allege otherwise. Therefore, confirmation of the Hilton Award against the St. Regis under these circumstances (or, alternatively, forcing it to present such evidence in court rather than to an arbitrator who has years of familiarity with this industry) would be "manifestly unfair and unreasonable."

**B.    Plaintiffs As Individual Employees**
**<u>Lack Standing to Confirm the Hilton Award.</u>**

As a general rule, "employees represented by a union are not parties to the collective bargaining agreement or any union-company arbitration," and thus lack standing to "challenge, modify or confirm [an arbitration] award in court." *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1244 (7th Cir. 1990); *see also Vosch v. Werner Continental*, 734 F.2d 149 (3d Cir. 1984). The exception to this rule permits individual employees to challenge or

---

[6]    As used herein, the term "St. Regis Exh." refers to the exhibits attached to the Greene Declaration.

[7]    The court may consider the affidavit testimony and other evidence outside the pleadings on a motion to dismiss for lack of subject matter jurisdiction without converting the motion to one for summary judgment, and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

confirm a union-company arbitration award "*but only* if the employees state a claim for a section 301/fair representation case and the challenge or confirmation is integral to the case." *Martin*, 911 F.2d at 1244 (emphasis in original); *see also Vosch,* 734 F.2d at 154 (employees may appeal an adverse arbitration award if they are able to show that the union's conduct was "arbitrary, discriminatory, or in bad faith"). The rule in the Second Circuit is no different. The Court in *Katir v. Columbia University*, 15 F.3d 23, 24 (2d Cir. 1994), adopted the approach outlined in *Martin* and affirmed that the plaintiff there lacked standing because, as a union-represented employee of the employer, she (1) was not a party to the arbitration between her employer and union, and (2) had not alleged that the union had breached its duty of fair representation. *Id., citing Martin*, 911 F.2d at 1244. *See also Carrion v. Enterprise Ass'n, Metal Trades, Local 638*, 227 F.3d 29, 33 (2d Cir. 2000) (claim that union failed to enforce labor arbitration award is "a hybrid of § 301/fair representation claim," which requires plaintiff to show "breach of the union's duty of fair representation"); pages 13-14, *infra*.

The plaintiffs here are not even employees of the Hilton Hotel, a third-party employer not named in this lawsuit. The St. Regis is not aware of any case law that allows them standing to enforce labor arbitration awards issued as to some other peoples' employer merely because their employer and the St. Regis are both bound by the same multi-employer collective bargaining agreement.

Furthermore, the Plaintiffs, as individual employees, lack standing to demand that the Court confirm the Hilton Award because the Amended Complaint does not allege facts sufficient even to suggest that the Union breached its duty of fair representation to them with respect to enforcement of the Hilton Award. *See Katir*, 15 F.3d at 24; *cf. Carrion*, 227 F.3d at 33. Indeed, Plaintiffs admit in their Amended Complaint that following the issuance of the

10

Hilton Award and shortly after issuance of the later Clarification Award, the Union commenced an arbitration proceeding against the St. Regis Hotel (IC No. U05-649) to assert the same legal position that it had successfully asserted against the Hilton.  (Compl., ¶ 50.)

The Union's strategic decision to attempt to enforce the Hilton Award against the St. Regis by means of a subsequent labor arbitration, instead of a court action for confirmation, does not constitute breach of the duty of fair representation by any means.  A choice favoring pre-existing dispute resolution mechanisms cannot reasonably be characterized as "arbitrary, discriminatory, or in bad faith," especially because "Congress itself has declared that the best method for resolving grievances between employers and employees represented by a union is the procedure to which the parties themselves have agreed," *see, e.g., Vosch*, 734 F.2d at 154.  And, it is certainly within the "wide range of reasonableness" that the law affords unions with respect to their obligations as an employee's collective representative, *see Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 76 (1991); *White v. White Rose Food*, 237 F.3d 174, 180 (2d Cir. 2001).

For all these reasons, Plaintiffs' claim, in this lawsuit, for confirmation of the Hilton Award must be dismissed.

## Point II

### PLAINTIFFS FAIL TO STATE A CLAIM AS TO THE MAINTENANCE OF A TIP-POOL BECAUSE THE SETTLEMENT AGREEMENT IS A COMPLETE DEFENSE.

As a purported Third Claim For Relief, plaintiffs allege that the St. Regis "dilute[d]" their gratuity-based compensation by maintaining what they called "an illegal Tip Pool."  (Compl., ¶ 265.)  Further alleging that the Union "failed to take appropriate actions to represent" plaintiffs with respect to the tip pool, plaintiffs seek a court order holding the St. Regis liable for "all losses incurred" as a result of its having previously maintained the tip pool

11

and a declaring that it was "illegal." (Compl., ¶¶ 266-67.)  None of these allegations, however, give rise to a cause of action against the St. Regis under well-settled principles of federal labor law because a grievance raising precisely the tip-pooling issue was settled and withdrawn prior to this lawsuit.

A.    **Because the Union Settled The Tip-Pooling Grievance Before Concluding Arbitration, Plaintiffs Cannot Assert a Claim Against the St. Regis.**

Under federal labor law, when unionized employees assert a claim against their employer for breach of a collective bargaining agreement under Section 301 of the Labor Management Relations Act ("*LMRA*"), 29 U.S.C. § 185, it is, by operation of law, a "hybrid" claim for which the employees must also plead and prove that their union violated its duty of fair representation in its handling of the plaintiffs' alleged contract breach.  *See DelCostello v. Intern. Broth. of Teamsters*, 462 U.S. 151, 164-65 (1983); *Carrion*, 227 F.3d at 33-34; *Tomney v. International Center for Disabled*, 357 F. Supp. 2d 721, 738 (S.D.N.Y. 2005).  In such a hybrid suit, plaintiffs cannot succeed in their contract claim against their employer unless they first establish that the union violated its duty of fair representation.  *See White v. White Rose Food*, 237 F.3d at 178-79 & 183; *Acosta v. Potter*, 410 F. Supp. 2d 298, 309 (S.D.N.Y. 2006) (because union's breach of its representation duty is "'a prerequisite'" to claim against employer for breach of labor agreement, courts "need not reach the question" of such contract breach "unless the union has acted arbitrarily, in bad faith or discriminatorily" in processing employee's grievance), *citing Young v. U.S. Postal Serv.,* 907 F.2d 305, 307 (2d Cir. 1990).  Where there is no breach by the union of its duty of fair representation, the Section 301 claim against the employer must be dismissed.  *White*, 237 F.3d at 183.

Furthermore, where, as here, the labor agreement contains an express provision for resolution of grievances through a process resulting in arbitration, there is a second,

independent requirement of a Section 301 suit against an employer for contract breach: namely, the plaintiff must have utilized the grievance and arbitration mechanisms contained in the collective bargaining agreement before, and as a precondition for, bringing his action in federal court. *See DelCostello*, 462 U.S. at 163-69; *Maddalone v. Local 17, United Broth. of Carpenters and Joiners of America*, 152 F.3d 178, 186-87 (2d Cir. 1998). Indeed, as this Court has itself recently observed, where a labor agreement "contains a binding grievance and arbitration process, an employee cannot avoid the private dispute resolution mechanism simply by suing her employer in court." *Acosta v. Potter*, 410 F. Supp. 2d at 308. Rather, in that circumstance, a judicial action against the employer under LMRA § 301 "will still be open *only if* the employee can show that either failure to pursue the grievance process or the unsuccessful result thereof was 'due to the Union's wrongful conduct, that is, a breach of its duty to represent plaintiff fairly." *Id.* (emphasis added).

Lastly, the Supreme Court has long-ago recognized that informal settlement of grievances, as opposed to the more formal and costly processes of labor arbitration, is the preferred method of resolving disputes in labor-management relations. In fact, in its seminal decision of *Vaca v. Sipes* over 40 years ago, the Court expressly approved the settlement of grievances before arbitration has even commenced:

> [W]e do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement. . . . In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate *that each will endeavor in good faith to settle grievances short of arbitration*. Though this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures. . . .

13

> If the individual employee could compel arbitration of his
> grievance regardless of its merit, the settlement machinery
> provided by the contract would be substantially undermined, thus
> destroying the employer's confidence in the union's authority and
> returning the individual grievant to the vagaries of independent and
> unsystematic negotiation. Moreover, under such a rule, a
> significantly greater number of grievances would proceed to
> arbitration. This would greatly increase the cost of the grievance
> machinery and could so overburden the arbitration process as to
> prevent it from functioning successfully. . . . For these reasons, we
> conclude that a *union does not breach its duty of fair
> representation, and thereby open up a suit by the employee for
> breach of contract, merely because it settled the grievance short of
> arbitration.*

*Vaca v. Sipes*, 386 U.S. 171, 191-92 (1967) (emphasis added). Since, therefore, the Union could

have settled this matter *before* arbitration hearings had commenced and not thereby violated its

duty of fair representation, it surely could not have done so after commencing the arbitration,

which is what Plaintiffs here allege.

To the extent Plaintiffs seek to resurrect their settled grievance in federal court by

attacking the legitimacy of the Settlement Agreement, they are equally beyond the pale, as a

federal court's role in reviewing an agreement that resolves of dispute between labor and

management is extremely limited and highly deferential. As the Supreme Court has explained:

> Congress did not intend judicial review of a union's performance
> to permit the court to substitute its own view of the proper bargain
> for that reached by the union. Rather, Congress envisioned the
> relationship between the courts and labor unions as similar to that
> between the courts and the legislation. Any substantive
> examination of a union's performance, . . . therefore, *must be
> highly deferential, recognizing the wide latitude that negotiators
> need for the effective performance of their bargaining
> responsibilities. . . .* [For that reason,] the final product of the
> bargaining process may constitute evidence of a breach of duty
> *only if* it can be fairly characterized as *so far outside a "wide range
> of reasonableness"* . . . that it is wholly "irrational" or "arbitrary."

*Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 78 (1991) (internal citations omitted)

(emphasis added). Even if a settlement agreed to by a union turns out in retrospect to have been

14

a bad one, that is not itself evidence that a union acted so irrationally as to breach its duty of fair representation, for "even a bad settlement may be more advantageous in the long run than a good lawsuit." *Id.* at 79, 81. Thus, when a union opts to enter into a settlement agreement to resolve a labor-management dispute, it does not breach its duty of fair representation unless, in doing so, it has acted arbitrarily, discriminatorily, or in bad faith. *See id.* at 77.

While it is safe to assume that the Plaintiffs view the Settlement Agreement as unfavorable or unwise, that is not, as a matter of law, sufficient to show that the Union breached its duty of fair representation. Nor do Plaintiffs allege any facts that go beyond their mere displeasure with what their Union has bargained for on their behalf.

Thus, for example, Plaintiffs allege that the Settlement Agreement "takes away a contractual guarantee" by not basing gratuities on the number of covers (Compl., ¶ 216) and also "pass[es] authority" to the Hotel to establish work rules related to their employment (Compl., ¶ 218), apparently referring to the provision of the Settlement Agreement that authorizes the St. Regis to adopt "passing" rules, *see* pages 6-7, *supra*. Such allegations at most argue that the Settlement Agreement achieved results worse than the Union would have achieved by proceeding with arbitration all the way to an award. Getting less than total victory, however, is the nature of settlement and, as the Supreme Court made clear in *O'Neill*, not even arguably grounds to find that the Union's conduct was arbitrary or in bad faith. *See O'Neill*, 499 U.S. at 79, 81.

Plaintiffs' claim is no stronger with respect to their allegation that some servers are "shortchanged" by the Settlement Agreement while others are not. (Compl., ¶ 217.) As the Second Circuit has recognized, unions cannot satisfy all their members all the time, and balancing an agreement in favor of one group or other of employees does not constitute a breach

15

of the union's duty of fair representation. *See Spellacy v. Airline Pilots Association-International*, 156 F.3d 120, 129 (2d Cir. 1998). In *Spellacy*, plaintiffs were a group of pilots who had been adversely affected by an agreement entered into by their union involving transfers of some pilots from their bankrupt airline to a second airline. In affirming the district court's grant of judgment as a matter of law for the employer, the Second Circuit explained that "[a] union's reasoned decision to support the interests of one group of employees over the competing interests of another group does not constitute arbitrary conduct" of the sort that rises to breach of the duty of fair representation. *Id.* This Court, too, has similarly noted that a union "has broad discretion to adjust [to] the demands of competing groups within its constituency," without thereby breaching their representational duties. *Acosta*, 410 F.Supp. 2d at 309.

Moreover, while discrimination by a union against racial or ethic minorities or women is not fair representation, the purported discrimination in favor of one set of economic interests over another is a necessary result of the kind of compromises unions make all the time; it is ineluctably woven into its role as a "collective" representative, and it is not, itself, a breach of the duty of fair representation. *See O'Neill*, 499 U.S. at 81; *Beckman v. U.S. Postal Service*, 79 F.Supp. 2d 394, 404 (S.D.N.Y. 2000). Thus, whatever Plaintiffs may mean by alleging that the Settlement Agreement treats some "properly" or "shortchange[s]" others, it is not sufficient, as a matter of law, to transfer the locus of decision-making for workplace governance from the Union and the Hotel to this Court.

Nor can Plaintiffs avoid dismissal by their conclusory allegation that the Settlement Agreement was the product of "collusion" between the Hotel and the Union or the Union's lack of "honesty[] and . . . good faith." (Compl., ¶ 227.) As the Supreme Court recently held in *Bell Atl. Corp. v. Twombly*, -- U.S. --, 127 S.Ct. 1955, 1964-65 (2007), "[w]hile a

16

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires *more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do*." *Twombly*, 127 S.Ct. at 1959 (citations omitted) (emphasis added). According to the Court, plaintiffs must allege "enough facts to state a claim to relief that is *plausible on its face*," and when they "have not nudged [their] claims across the line from conceivable to plausible, [their] complaint must be dismissed." *Id*. at 1960 (emphasis added).

In *Twombly*, the plaintiffs had contended that defendants had conspired to restrain trade by thwarting competition for local telephone service, but alleged as fact only that the defendants had acted in parallel with respect to certain practices. The Court found that those allegations failed to provide plausible grounds for concluding that defendants had actually entered into an illegal agreement or conspired, which was an essential element of their antitrust cause of action. *Twombly*, 127 S.Ct. at 1970. Similarly here, there is no question that the Union and the St. Regis negotiated and bargained with one another in coming to the Settlement Agreement – under federal labor law, that is precisely what they were supposed to do – but Plaintiffs' characterization of "collusion" is no more plausible from those facts than was the *Twombly* plaintiffs' assertion of conspiracy.

The Second Circuit has recognized that *Twombly* has universal application and requires plaintiffs in any action to meet a "flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Indeed, even before *Twombly* courts would dismiss complains that alleged no more than the mere possibility that something illegal had occurred. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (the "mere possibility of loss causation" is insufficient to withstand dismissal); *First Nationwide Bank v. Gelt Funding Corp.*,

27 F.3d 763, 771 (2d Cir. 1994). ("[u]nwarranted deductions of fact are not admitted" for purposes of a motion to dismiss.) Thus, Plaintiffs' conclusory characterization of "collusion" is, under both *Twombly* and pre-existing law, not sufficient to withstand a motion to dismiss. *See Bey v. Welsbach Elec. Corp.*, 01 Civ. 2667, (LAP) 2001 WL 863419, at * 4 (S.D.N.Y. July 30, 2001) (plaintiff's allegation that employer and union "'want him to go away' and are working together against him" are insufficient to excuse failure to exhaust grievance procedure as to agreement settling prior grievance).

Lastly, to the extent Plaintiffs insinuate that the Union breached its duty of fair representation by the manner in which it handled the tip-pooling grievance in arbitration (*see* Compl., ¶¶ 179-204), that claim was rendered moot by Union's entering into the Settlement Agreement, which disbanded the tip pool and withdrew "with prejudice" the tip-pooling grievance (*id.*, ¶¶ 213-14; St. Regis Exh. C, ¶¶ 1 & 5). Since, as shown above, the Union did not breach any duty it owed Plaintiffs in settling the grievance short of a final arbitration, the settlement ends the matter as to the St. Regis because, as the employer, it is entitled to rely on union-made settlements, side letters, and supplemental memoranda of understandings to fix the scope of its obligations under the IWA. *Kozera v. Westchester-Fairfield Chapter of Nat'l Elec. Contractors Ass'n*, 909 F.2d 48, 54 (2d Cir. 1990); *Acosta v. Potter*, 410 F. Supp. 2d at 309.

**B.    Delayed Implementation of the Settlement Agreement Does Not Give Plaintiffs A Claim.**

Plaintiffs also allege that the Hotel delayed implementing the Settlement Agreement, though they admit that as of May 16, 2008, it had been implemented. (Compl., ¶¶ 225 & 277.) To the extent the delayed implementation transgressed some right Plaintiffs think they have, that grievance too must be submitted to arbitration, rather than this Court, both under the IWA and the express terms of the Settlement Agreement itself.

18

Before an employee may bring suit under § 301 against his employer, he "is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello*, 462 U.S. at 163; *see also Dougherty v. American Tel. and Tel. Co.*, 902 F.2d 201, 204 (2d Cir. 1990); *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 704-705 (S.D.N.Y. 2006) (a collective bargaining agreement's grievance mechanisms are the "preferred method of resolving disputes between the employer and the employee"). Moreover, there is "a presumption of arbitrability" under federal labor law, and it requires that disputes related to labor agreements must be sent to arbitration unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 77 (1998) (internal citations omitted). Therefore, where, as here, the federal claim concerns the settlement of a prior grievance that "directly concerns issues existing under and controlled by the CBA, the employee must generally utilize the grievance procedures [in the CBA] before bringing a claim in federal court." *Bey, supra,* at *3 (citing cases) (internal citations omitted). Even more so must that be the result here because the Settlement Agreement itself explicitly states that "[a]ny disputes regarding [it] shall be referred to the grievance and arbitration process of the IWA." (St. Regis Exh. C, ¶ 8.) Plaintiffs have proffered no plausible excuse for not seeking arbitration of their presumed grievance that the Settlement Agreement was not swiftly implemented.

*        *        *        *        *        *

In sum, plaintiffs do not state a Section 301 claim against the St. Regis with respect to maintenance of a tip pool because the Settlement Agreement bars it. Their Complaint is a thinly-veiled attempt to alter through litigation provisions of the Settlement Agreement that they dislike. But that is precisely what federal labor law disallows.

19

**Point III**

**JUDICIAL ACTION AS TO THE "UNRESOLVED CONTRACT
ISSUES" IS PREMATURE PRECISELY BECAUSE THEY ARE UNRESOLVED.**

As a purported Fourth Claim for Relief, Plaintiffs make myriad other allegations regarding additional banquet gratuity issues which they refer to as "overstaffing, bartending, meetings, breakfasts, receptions and coffee breaks." (Compl. ¶ 271.) Yet, they admit that a proposal to "resolve most of these issues" was presented by the Union way back in June 2007 (*id.* ¶ 244); that after the Plaintiffs rejected those proposals (*id.*, ¶ 253); that they were invited to a meeting between the Union and the St. Regis "to resolve them," and that these matters are all "still pending" (*id.* ¶ 256). Significantly, while bemoaning the length of time that the grievance process has taken, they nowhere allege that the Union has failed or refused to pursue those grievances to arbitration. (Compl., ¶¶ 256 & 271.)

For the reasons previously stated, *see* pages 13-14, *supra*, Plaintiffs must exhaust the grievance and arbitration mechanisms under the IWA before asserting a § 301 claim in federal court as to the "unresolved contract issues." Neither their apparent dissatisfaction with the time it has taken the Union to attempt to exact from the Hotel an agreement to Plaintiffs' liking nor their conclusory allegation of "collus[ion]" (Compl. ¶ 271) is adequate to excuse their undenied failure to exhaust the grievance mechanism provided for under the IWA. *See Fraternal Order of Police v. U.S. Postal Service*, 988 F. Supp. 701, 711 (S.D.N.Y. 1997) ("defendants' continuous engagement in the grievance procedures established by the CBA" precluded plaintiffs' argument that they were excused from exhausting contractual grievance procedures); *see also Dougherty*, 902 F.2d at 204-05 (2d Cir. 1990); *Vera*, 424 F. Supp. 2d at 703-07 (S.D.N.Y. 2006); *Giron v. Balcor Co.*, No. 97 Civ. 5065(DLC), 1998 WL 274286, at *3-5 (S.D.N.Y. May 27, 1998); *Farkas v. Ellis*, 780 F. Supp. 1013, 1016-18 (S.D.N.Y. 1992).

As the grievance mechanisms of the IWA have not yet been exhausted for the

pending and unresolved contract issues, Plaintiffs' § 301 claims regarding them cannot proceed.

### Point IV

### BECAUSE PLAINTIFFS HAVE FAILED TO JOIN ALL ST. REGIS BANQUET SERVERS, WHO ARE NECESSARY PARTIES TO THIS ACTION, THE COMPLAINT MUST BE DISMISSED.

Under Rule 12(b)(7) of the Federal Rules of Civil Procedure, dismissal of an

action may be granted for failure to join a party pursuant to Rule 19.  Under Rule 19, a party is

required to be joined if the party's absence results in a court's inability to fashion complete relief

or if "that person claims an interest relating to the subject of the action and is so situated that

disposing of the action in the person's absence may: (i) as a practical matter impair or impede the

person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk

of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  *See*

Rule 19(a)(1)(B).

When the party sought to be joined is a party to or joint obligee under a contract

that is the subject of the litigation, it is well-established that that party is considered a necessary

party.  *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000); *see also*

*Jonesfilm v. Lion Gate Intern.*, 299 F.3d 134, 141 (2d Cir. 2002); *Weinberg v. Herzog*, 07 Civ. 18

(CM), 2007 WL 946833, at * 2 (S.D.N.Y. Mar. 27, 2007).  The Plaintiffs here are some – but not

all – of the banquet servers employed by the St. Regis.  Those banquet servers who are not

parties to this litigation are bound by the IWA in the same manner as Plaintiffs.  The terms and

conditions of their employment as set forth under the IWA, including the manner in which they

are to be paid, will here be determined.  Thus, they will be directly affected by any determination

made in these proceedings; their ability to protect their interests in their employment and

compensation will be seriously undermined by not being included in this litigation, and they are, therefore, necessary parties under Rule 19. *See Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) (citing with approval a Ninth Circuit decision that "all parties who may be affected by the determination of the action are indispensable").

Additionally, without the presence of the remaining banquet servers, both the Union and the St. Regis will remain subject to claims from these individuals on the same issues as are being raised here and are at risk of being subject to inconsistent obligations. The non-party servers could sue. Any decision of this Court would bind the Plaintiffs but not the remaining banquet servers, who would remain free under the IWA to grieve both the issues underlying this action and the effect of any decision by this Court on their employment. An arbitrator who hears these matters is not necessarily bound to any factual findings of this Court. Courts have routinely dismissed actions where defendants faced similar duplicate and inconsistent obligations. *See Weinberg*, 2007 WL 946833 at * 2; *Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 710 (S.D.N.Y. 1997) (granting motion to dismiss certain claims under Rule 12(b)(7) and noting that failure to join a party to the contract "will lead to a risk of further litigation over the breach of contract dispute").

Accordingly, all remaining banquet servers are clearly necessary parties that have not been joined. This action should therefore be dismissed pursuant to Rule 12(b)(7), or, in the alternative, this Court should, under Rule 19(a)(3), direct Plaintiffs to effect joinder of all of the St. Regis banquet servers who are not now party to this litigation.

22

**Point V**

**DUE TO THE EXPRESS STATUTORY EXEMPTION FOR "BANQUET . . . FUNCTIONS," THE MANDATORY TIP POOL DID NOT VIOLATE NEW YORK STATE LABOR LAW.**

In their purported Sixth Claim for Relief, Plaintiffs challenge the tip-pooling practice of the St. Regis as allegedly violating Section 196-d of the New York State Labor Law. Plaintiffs allege that the law obligated the St. Regis to "pay full contract gratuities" on all banquet functions and "not dilute Plaintiff's gratuities through the maintenance of an illegal tip pool." (Compl., ¶ 279.)  However, the law contains no such protections for Plaintiffs, who work not in restaurants but as banquet servers.

Section 196-d provides, in relevant part, that "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  Some New York cases suggest that this language prohibits employers from maintaining a "mandatory tip sharing policy" that requires food servers to pool their tips, unless each individual server has consented to doing so. *See Hartnett v. Wade-Mark Eleven, Inc.*, 156 A.D.2d 559, 559, 549 N.Y.S.2d 69, 70 (2d Dep't 1989).  Though the statutory basis for this interpretation is far from clear, there is no need here to consider its propriety because there is express exemption for "banquet . . . functions" under Section 196-d.  That exemption states as follows::

> Nothing in this subdivision shall be construed as affecting . . . practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee.

The application of the "banquet . . . function" exemption to Section 196-d was only recently addressed by the New York Court of Appeals in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 77, N.Y.S.2d 83, 86 (2008).  There, the court reviewed the statute's legislative

history and concluded that the banquet exemption was added "in order to ensure the [hotel] industry could continue its common practice of applying a fixed percentage, or lump sum payment, to a banquet patron's bill as a gratuity which then was distributed to all personnel engaged in the function," thereby preserving the pre-existing practice of "pooling for later distribution of tips to all involved employees." *Id.* at 80.

Since the banquet exemption to Section 196-d, as construed by New York's highest court, permits the mandatory pooling of tips in the hotel industry, and as Section 196-d contains no language authorizing an inquiry into alleged "dilut[ion]" of tips in the hotel industry by use of mandatory tip pooling arrangements, Plaintiffs can have no claim under New York State labor law.

**CONCLUSION**

For the foregoing reasons, plaintiffs' Second Amended Complaint should be dismissed in all respects under Rule 12(b)(1) for lack of subject matter jurisdiction, under Rule 12(b)(6) for failure to state a cause of action, and Rule 12(b)(7) for failure to join an indispensable party.

Dated: New York, New York
      May 12, 2008

Respectfully Submitted,

HOGAN & HARTSON LLP

By:_____/s/_____

    Michael Starr (MS 6851)
    Christine M. Wilson (CW 3440)
    875 Third Avenue
    New York, New York 10022
    (212) 918-3000
    *Attorneys for Defendant Manhattan*
    *Sheraton Corporation d/b/a St. Regis Hotel*

To:    Robert N. Felix, Esq.
        11 Broadway, Suite 715
        New York, New York 10004
        (212) 747-1433
        *Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
JOSEPH BEJJANI, et al.,

                                        Plaintiffs,

            - against -                                07 Civ. 10729 (HB) (DCF)

MANHATTAN SHERATON CORPORATION d/b/a ST.
REGIS HOTEL and NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO,

                                        Defendants.
-------------------------------------------------------------------x

<u>CERTIFICATE OF SERVICE</u>

    I, Christine M. Wilson, certify under penalty of perjury that on this 12th day of May, 2008, I caused to be served true and correct copies of defendant Manhattan Sheraton Corporation's Notice of Motion to Dismiss the Second Amended Complaint, Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint, and the Declaration of George Greene dated May 9, 2008, along with exhibits attached thereto, to be served by first class U.S. mail and by electronic means to the following counsel of record:

Robert N. Felix, Esq.
11 Broadway, Suite 715
New York, NY  10004

Bruce J. Cooper, Esq.
Pitta & Dreier LLP
499 Park Avenue
New York, New York 10022

Christine M. Wilson

HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
*Attorneys for Defendant Manhattan*
*Sheraton Corporation*