Michael Starr, Esq.
Christine M. Wilson, Esq.
Hogan & Hartson, LLP
875 Third Avenue
New York, New York 10022
(212) 918-3000

*Attorneys for Defendant Manhattan Sheraton
Corporation d/b/a St. Regis Hotel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JOSEPH BEJJANI, et al.,

                Plaintiffs,

      - against -

MANHATTAN SHERATON CORPORATION d/b/a ST.
REGIS HOTEL and NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO,

                Defendants.
------------------------------------------------------------------x

07 Civ. 10729 (HB) (DCF)

**DECLARATION**
**OF GEORGE GREENE**

    I, **GEORGE GREENE**, declare as follows:

    1.    I am Vice President of Labor Relations at Starwood Hotels & Resorts Worldwide, Inc. ("*Starwood*"), which operates the St. Regis Hotel in New York City (the "*St. Regis*") and owns the St. Regis through its wholly-owned subsidiary, defendant Manhattan Sheraton Corporation. I have held my current position since January of 2003. Including that, I was employed by Starwood for over 26 years holding various positions related to labor-management relations in New York City and elsewhere in the United States. I submit this declaration in support of the St. Regis' motion to dismiss. I have personal knowledge of the facts stated herein or believe them to be true based on my experience and involvement in labor relations matters for Starwood over the past 26 years.

2.  Defendant New York Hotel & Motel Trades Council, AFL-CIO (the "*Union*") and the Hotel Association of New York City, Inc., a hotel trade association, are parties to a collective bargaining agreement applicable to hotels in New York City that is commonly known as the "*Industry-Wide Agreement*" or "*IWA.*" The IWA governs the terms and conditions of union members' employment at hotels that are bound by the IWA. The St. Regis is one such hotel. Upon information and belief, the Hilton Hotel is bound by the IWA.

3.  I am aware that in or about 2007 the Hilton Hotel and the Union proceeded to arbitration before Arbitrator Philip Ross of the Office of the Impartial Chairman over a grievance alleging a violation of Article 47(D) of the IWA with respect to room rental charges and banquet server gratuities (the "*Hilton room rental arbitration*").

4.  In my position, I was advised of the Hilton room rental arbitration. At no time during that proceeding was the St Regis Hotel asked or given the opportunity to present evidence to the Office of the Impartial Chairman concerning its particular relevant historical practices.

5.  I am familiar with banquet department charge practices in the hotel industry and at the Hilton Hotel. Upon information and belief, if the St. Regis had been permitted to offer evidence in the Hilton room rental arbitration, that evidence would have shown that its historical practices regarding room rental charges and banquet functions were different from those at the Hilton Hotel in ways material to the issues in that arbitration. Upon information and belief, during the Hilton room rental arbitration, Arbitrator Ross at no time had before him or considered any evidence regarding relevant banquet practices at the St. Regis.

6.  Attached hereto as Exhibit A is a true and correct copy of the decision issued by the Office of the Impartial Chairman in the Hilton room rental arbitration, dated August 23, 2007.

7.  Attached hereto as Exhibit B is a true and correct copy of the supplemental

decision issued by the Office of the Impartial Chairman in the Hilton room rental arbitration, dated December 4, 2007.

8. For many years, the St. Regis operated a tip pool, also called the "kitty," whereby gratuities collected from customers at banquet functions were distributed to banquet servers. In or about October of 2003, certain banquet servers, including some of the plaintiffs in this action, began to express a wish to "exit" the tip pool. Both the Union and the St. Regis filed grievances concerning the tip-pooling practices of the St. Regis, with the Hotel asserting that the practices were authorized by the IWA, and the Union asserting that they violated it. The grievances proceeded to hearings before the Impartial Chairman in accordance with the IWA and were ultimately resolved by a Settlement Agreement between the St. Regis and the Union dated May 29, 2007 (the "*Settlement Agreement*") that, among other things, discontinued the tip-pool practice.

9. Attached hereto as Exhibit C is a true and correct copy of the May 29, 2007 Settlement Agreement.

I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct and that this Declaration was executed in New York, New York on May 9, 2008.

_____
GEORGE GREENE

# EXHIBIT A

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2007-40
Hilton New York
August 23, 2007
Page 1 of 9

**EMPLOYER:** HILTON NEW YORK

HTC Case #U03-252/Pat Morgan, BQT Server/Management's unjust and improper raise of the service charge on Banquet functions from 19% to 21% in the last two (2) years, rather than raising the prices charged on food and beverage, in an attempt to avoid increasing the Banquet Servers' wages (Pat Morgan, Banquet Server, Delegate).

Hearings held at the Office of the Impartial Chairperson on March 4 and June 16, 2004; February 16, 2005; May 1 and September 29, 2006; and, May 16, 2007.

**APPEARANCES:**

| | |
|---|---|
| For the Employer: | Chuck Wing, Director of Human Resources |
| | James Pellegrinon |
| | Labor Relations Director |
| | Ines Cartagena, Previous Director of Human Resources |
| Counsel for the Employer: By: | Kane Kessler PC |
| | David Rothfeld, Esq. |
| | Robert Sacks, Esq. |
| | Theo Gould, Esq. |

For the New York Hotel & Motel Trades Council, AFL-CIO:
| | |
|---|---|
| Counsel: By: | Pitta & Dreier LLP |
| | Joseph Farelli, Esq. |
| For the Union: | Peter Ward |
| | Michael Simo |
| | Chris Cusack |
| | Eddie Cedeno, Current Business Agent |
| | Oscar Jirau, Previous Business Agent |

* * *

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2007-40
Hilton New York
August 23, 2007
Page 2 of 9

This case has a storied life. Whether as a grievance or not, the record discloses that the parties first met on the issue in 2002 and the subject grievance was filed on November 11, 2003. The grievance read: "Pat Morgan, BQT Server/Management's unjust and improper raise of the service charge on Banquet functions from 19% to 21% in the last two (2) years, rather than raising the prices charged on food and beverage, in an attempt to avoid increasing the Banquet Servers' wages (Pat Morgan, Banquet Server, Delegate).

The first scheduled arbitration date at the Office of the Impartial Chairman was February 4, 2004 and after multiple postponements and hearings, a final hearing was held on May 16, 2007. A briefing schedule was established with a terminal date for the Union's rebuttal brief on July 3, 2007. All briefs were submitted timely.

This dispute is centered on the meaning and application of Article 47(D)(1) of the IWA, which reads:

> Effective July 1, 1995, except as otherwise provided herein, the UNION and the EMPLOYER agree that with respect to banquet functions, a minimum gratuity equal to fifteen percent (15%) shall be paid to tip category employees (banquet waiters/waitresses and captains) working said functions, pursuant to established practice in each hotel as of July 1, 1995.
>
> If, however, any EMPLOYER signatory hereto is currently paying its employees banquet gratuity amounts which would require that EMPLOYER to increase its current gratuity rate by more than one percent (1%) during the first year of this Agreement, the EMPLOYER shall increase the gratuity required hereunder in two (2) equal increases in each of the first two years of this Agreement.

The Union's position in this dispute was set forth in its brief, which opened:

> The facts of this case, which are uncontested, are simple. In 1995, the parties agreed that the Hotel would pay tipped banquet employees ("Banquet Servers") a minimum gratuity equal to 15% of the total banquet bill, in accordance with the practice as it existed at the time. In an effort to avoid paying this gratuity, the Hotel subsequently altered the established practice and began regularly charging banquet customers a "room rental" fee in addition to the customary food and beverage ("F&B") charge. No additional services were provided for this fee – customers had always been provided a room in which to have the function at no charge. More importantly, no gratuities were paid on this "room rental" fee.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2007-40
Hilton New York
August 23, 2007
Page 3 of 9

Over the years, the percentage of the total banquet bill allocated to room rental fees increased. Over the same period, the percentage of the total banquet bill allocated to F&B charges shrank by an equal amount. In other words, the Hotel has, since 1995, been steadily shifting banquet charges from F&B charges (on which the Hotel was required to pay gratuities) to room rental fees (on which the Hotel paid no gratuities). For each dollar the Hotel so moved, it kept fifteen cents that would have been otherwise paid to the Banquet Servers. This simple ploy robbed millions from the pockets of Banquet Servers.

This change in practice is a clear attempt to subvert the clear understanding the parties reached in 1995 and circumvent the unambiguous language of the Industry Wide Agreement ("IWA"). First, the plain language of the IWA requires that banquet gratuities be paid on the entire banquet bill and does not provide for or allow any "carve outs." Second, even if the IWA allows hotels to exclude room rental fees from the calculation of banquet gratuities as an established practice, the Hotel has failed to establish that such a practice existed in 1995.

The unusual demands of the hotel banquet business impose special hardships and conditions on Banquet Servers. Banquet Servers work on-call, without any of the scheduling rights or notices of layoff or recall which other hotel employees enjoy. Banquet Servers are obliged to work brutally long hours, day after day, during the busy season. During the slow season, however, Banquet Servers are given little or no work, but are expected to put their obligation to the hotel ahead of other employers and make themselves available, as always, to come in to work with no notice, at the hotel's convenience. For these reasons, a separate and complex system of compensation, scheduling, and benefit eligibility and funding has been constructed within the IWA for Banquet Servers (See Schedule A-1). The IWA provides that Banquet Servers have a special stake in the hotel's business. To a much greater degree than other employees, Banquet Servers share with the hotel the risks and rewards associated with the fluctuations in the hotel's business. Under the IWA, banquet gratuities represent the vast majority of the total compensation Banquet Servers receive from the hotel. Banquet gratuities also account for the same percentage of the hotel's total contribution to the benefit funds paid on behalf of its Banquet Servers.

The shifting by the Hotel of banquet charges from F&B to room rental fees has no other business purpose than to reduce the compensation the Hotel pays to its Banquet Servers and the contributions it pays to the benefit funds on their behalf. This is, of course, not a legitimate business purpose. To allow this manipulation of banquet charges to continue would be to give management unbridled discretion to adjust, at its whim, on a sliding scale from zero to one hundred percent, the portion of the banquet bill on which the 15% banquet gratuity would

**OFFICE OF THE IMPARTIAL CHAIRPERSON**
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2007-40
Hilton New York
August 23, 2007
Page 4 of 9

apply, and thereby to take for itself a 15% windfall from the remainder of the bill. In other words, to allow this gimmick would be to change the banquet gratuity from a contractually mandatory commission into a discretionary tip from management.

The Union seeks a make whole remedy from the Impartial Chairperson for the adversely affected Banquet Servers. The Union also seeks an order from the Impartial Chairperson directing the Hotel to cease and desist improperly withholding gratuities.

The Union relies upon two kinds of evidence in support of its thesis on past practice. The first is the testimony of Patrick Morgan, a Banquet Server with 22 years of experience at the Hotel, who testified that prior to July 1, 1995, the Hotel's practice was not to charge a room rental fee and a banquet check was usually comprised of food and beverage charges. There were a very few exceptions to the room rental fee charges. Since 1995, the incidence of room rental charges began to increase, at first gradually and then at an increasing rate. Morgan noted this because the room rental charges, while increasing the guest bill, were not subject to the contractual 15% gratuity tip. The amount of the room rental fee reached astronomical heights as proof of which he introduced copies of twenty-six (26) Banquet Event Orders ("BEO") for 2006, in which the room rental fee was equal to or exceeded the food and beverage charges. (Union Exhibit #4) Supporting this testimony, the Union introduced other exhibits purporting to show that the Hotel had shifted a portion of guest banquet checks from F & B charges into room rental fees so that from the period 2000 to 2006, "the percentage of the Hotel's total banquet revenue derived from room rental fees increased by 5% from 1% to 6%". (Union Exhibits #6 & #7)

The second kind of evidence is negative in nature and is based upon its claim that the "Hotel destroyed all the relevant documentary evidence...the Hotel destroyed every last BEO, every last banquet contract and every last guest bill pre-dating July 1, 1995...The Hotel's destruction of relevant information is conclusive proof that no practice [i.e. Hotel supported practices] existed. Further it is well established that failure to preserve and produce relevant evidence leads to an adverse inference...Accordingly, even if the Union had not proved its case independently, the Hotel's failure to comply with its own document retention policy bolsters, if not proves, the Union's claim."

Further, the Union considers this behavior on room rentals to be a clear contractual violation of the IWA. "...the express language of the IWA requires that gratuities be paid on the ENTIRE bill. More specifically, Article 47(D)(1) provides 'with respect to banquet functions, a minimum gratuity equal to fifteen percent (15%) shall be paid to tip category employees...' Nowhere does it limit this payment to F & B charges. Nowhere does it exclude room rental fees. Indeed, the phrases "F & B" and "room rental" are not to be found anywhere in

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2007-40
Hilton New York
August 23, 2007
Page 5 of 9

the Article. Instead, Article 47(D)(1) demands that employees be paid 15% of the cost of the "banquet functions."

In support of this argument, the Union relies on the Award in Hillcrest Country Club and HERE, Local 24, 76 LA 437 (Rollins, 1981) where Arbitrator Rollins ruled that, "Had [the parties] desired to exclude some amount for rent, provision therefore could have been made [in the agreement], but obviously this was not done." The Union contends that in the absence of an exemption in Article 47(D)(1) for room rental, gratuities must be paid on the entire guest bill.

The Union's brief concludes on this point:

> Moreover, both logic and industry practice dictate that the Hotel's restrictive definition of F&B charges as excluding room rental was not what the parties' intended when Article 47(D)(1) was negotiated. Historically, the practice throughout the industry has been that hotels charge the entire price for a banquet in the form of a "F&B" charge. This term is shorthand for the price of the whole banquet. It included a myriad of items and services including: food; beverages; the labor costs from wages not only to Banquet Servers, but also to cooks, managers, salespeople, dishwashers, etc.; air conditioning; cleaning; linen; tables; chairs; utensils; dishes; glasses; and also (in all cases) a floor, doors, a ceiling, and walls (commonly known collectively as a "room").

Finally, the Union contends that irrespective of whether the Hotel is correct that gratuities need not be paid on the total banquet check, the Hotel, by creating and incrementally increasing room rental fees since 1995, which have reduced gratuities, has altered the established practice of July 1, 1995. This alteration of the established practice is an open and glaring violation of Article 47(D)(1). In this respect, the Union must insist that, "the undisputed evidence in this case demonstrated conclusively that no established practice of charging room rental fees existed prior to July 1, 1995." It is argued that the reclassification of room rental to 6% of banquet charges in 2006 "translates into a real gratuity of 14.1% in that year – nowhere near the 15% 'minimum' guaranteed by the IWA. And, if the Hotel continues its trend of reclassifying F & B charges as room rental fees at its current rate of approximately 1% per year, on the day the IWA expires, gratuities will be 13.2%."

The Union's conclusion: "If this Office validates the Hotel's subterfuge and gives hotels carte blanche to unilaterally shift charges to room rental fees, this Hotel, and the entire industry, will stop surreptitiously and incrementally shifting charges and openly exercise their new right by re-

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2007-40
Hilton New York
August 23, 2007
Page 6 of 9

classifying all banquet charges as room rental fees. Without hyperbole, an adverse decision in this case will mark the end of banquet gratuities in the hotel industry in New York City; eliminate Banquet Servers' primary source of income (along as Funds contributions); and invalidate Article 47(D)(1)."

The Hotel contests each element of the Union's argument and its post-Hearing brief summarizes its position by making the following major points:

> The IWA does not expressly require that gratuities be paid on the entire banquet bill. In fact, the IWA makes no attempt to define what items comprise the Gratuity Base.
>
> The phrase "pursuant to established practice in each hotel" does not refer to the composition of the Gratuity Base.
>
> Even if "established practice" in Article 47(D)(1) does refer to the composition of the Gratuity Base, the record evidence demonstrates that the Hotel charged room rental fees prior to 1995 without adding them to the Gratuity Base.
>
> Even if the Hotel had never charged separate room rental fees prior to 1995, the absence of a practice is not evidence proving an established practice.
>
> It is well established by this Office that the Hotel has wide latitude to determine the types and amounts of fees it charges its customers, absent evidence that such fees are a sham, and the Union presented no evidence of sham charges.
>
> The Union has failed to introduce any evidence establishing that the separate charges for room rentals have caused a diminution of gratuities.

With reference to the language of Article 47(D)(1), it denies the Union's supposition that the term, "a minimum gratuity of 15%" refers to the banquet bill: "The "express" language of Article 47(D)(1) does not say explicitly what the minimum percentage is applied to, nor does it identify the established practice on July 1, 1995." Moreover, room rental charges are nowhere mentioned in the IWA or elsewhere to be included in the Gratuity Base.

The Hotel further argues that "established practice", as a matter of basic contractual construction, only modifies the distribution of gratuities among tip category employees and has no reference to or provide any limitation on the composition of the Gratuity Base. The Union's reliance on the Hillcrest Country Club case is dismissed as "drawn from outside the IWA

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2007-40
Hilton New York
August 23, 2007
Page 7 of 9

hotel industry and turns on facts and contract language that do not provide any useful parallels to the instant case." Moreover, it is pointed out that the contract in Hillcrest specified, "A gratuity of 15% shall be added to all banquet checks." The words "banquet checks" are absent in the IWA and the arbitrator in Hillcrest did not have to decide that the cost of the room is included in the total price.

The Hotel maintains that it charged room rental fees separate from food and beverages prior to 1995, relying upon the testimony of Banquet Captain Pat Morgan. Its brief characterizes his testimony as proving that while "this may not have been done in each and every function, reflecting the negotiations between the Hotel and the guest, does not prove that there was no prior practice of excluding the room rental fee from the Gratuity Base. A hotel may engage in a practice as often or as infrequently as it determines, based on its business judgment."

In attacking the Union's use of the "total banquet price" argument, that is F & B charges, is shorthand for the price of the whole banquet, the Hotel points to Sundries, which are part of the price of the banquet but are not subject to gratuities. If Sundries are excluded, "then there is no rationale for not excluding room rentals as well. The historical exclusion of room rental revenue from the Gratuity Base makes perfect sense. The employees who share in the gratuities are not performing any 'services' in relation to the room (nor, for that matter, are they performing services in relation to the Sundries which are also excluded without Union challenge) nor to room rentals without food and beverages...The only nexus with the employees is that the banquet room is the worksite where they render services by serving the food and beverage items whose prices are the basis for their contractual gratuity. But Sundries are also provided in that worksite, and it is undisputed that Sundries are excluded from the Gratuity Base."

If forced to concede for the sake of argument that "established practice" refers to the Gratuity Base and that the Hotel never charged separate room rental fees prior to 1995, the Hotel maintains that the burden of proof is upon the Union to show a "specific practice existed at the Hotel and that the Hotel has deviated from that specific, established practice. The burden of proof never shifts to the Hotel, even if it declined to offer any proof on the issue of past practice... The Union's argument in this case is nothing more than a claim that prior to 1995, the Hotel did not exclude from the Gratuity Base room rental charges that, according to the Union, did not even exist prior to 1995....This 'negative practice' turns the definition of 'established practice' on its head and leads to the ridiculous result that every new charge of any kind established by the Hotel after July 1, 1995 would be subject to gratuities simply because it was not charged before 1995. It is totally unreasonable to conclude based on the scant language of Article

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2007-40
Hilton New York
August 23, 2007
Page 8 of 9

47(D)(1) and the evidence in the record that the 'established practice' included the entire universe of all charges which (allegedly) did not even exist."

The Hotel's post-Hearing brief concludes on two points: first, there is a lack of showing of diversion or shifting of revenue from the Gratuity Base to room rental charge and secondly, that the Union "has failed in the two contract negotiations since 1995 to obtain the concessions that it seeks in this arbitration."

As a preliminary matter I must dispose of the parties' arguments which are couched as being exceptional or even conclusive significance. I agree with the Hotel that Hillcrest Country Club does not dispose of the issue primarily because the wording of the contract in that case differs from that of the IWA. On the other hand, I disagree with the Hotel that the phrase in Article 47(D)(1) "pursuant to established practice in each hotel" modifies only the distribution of gratuities. If the parties intended such a construction, they could have said so. As I read the paragraph, as a grammatical matter the wording "established practice" is applicable to its subject that is banquet functions.

Similarly, I find not controlling, as urged by the Union, the Palace Agreement Settlement Agreement. While certainly showing a meaning in favor of the Union position, the Hotel persuasively objects that a Settlement Agreement does not rise to the precedential value of an IC Decision and Award.

After deliberation, I find that the evidence establishes that the Hotel has diverted food & beverage revenue which should have been part of the Gratuity Base, proving that the Union's fears that, if the Union's position is not adopted, the Hotel will be able to render the protections of Article 47(D)(1) meaningless and, therefore, I find that the Union's position is more plausible.

The clear intent of the Article 47(D)(1) is to protect and guarantee a set percentage to be distributed among tip category employees in the Banquet Department. I find merit in the Union's claim that any other reading, carried to its logical conclusion, would allow the Hotel to carve out ever larger portions of the bill as room rental or to create altogether new charges that it could claim as excluded from the Gratuity Base, which would be tantamount to undermining the very protections that the Article affords. Taking this protection and guarantee as the purpose of the paragraph, I find that Article 47(D)(1) requires the Hotel to include room rental in gratuity computations. Therefore, the Hotel's creation and steady increase in room rental fees shows that the Union's concern is valid and I find that the language of Article 47(D)(1) does not permit it.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2007-40
Hilton New York
August 23, 2007
Page 9 of 9

    Of course the Hotel should not take this holding to mean that it may create or maintain a charge called something other than room rental, but having the same effect of diverting revenue. My holding applies to any other fees or charges to banquet guests, regardless of what they may be called or when they were created. However, charges for sundries, which are customarily passed on directly to the client without mark-up, may continue to be excluded from the portion of the banquet bill used to determine the gratuity.

    Similarly, gratuities need not be paid on room rental charges for functions in a banquet room that are not banquets, i.e. those in which no food or beverages are served, unless existing practices are otherwise.

    I sustain the Union's grievance and direct the Hotel to henceforth pay gratuities in accordance with this Award and make whole all tipped banquet employees for any income lost as a result of the Hotel's violation. I hereby direct the parties to meet and determine this amount and, absent an agreement, I will retain jurisdiction over the matter.

It is so ordered.


Dated:    August 23, 2007
             New York, New York


    PHILIP ROSS, under the penalties of perjury duly affirms that he is the arbitrator described herein, and that he executed the foregoing instrument.

_____
IMPARTIAL CHAIRPERSON

**EXHIBIT B**

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2007-85R
Hotel Association of New York City, Inc.
December 4, 2007
Page 1 of 2

EMPLOYER: HOTEL ASSOCIATION OF NEW YORK CITY, INC.

HTC Case #M07-431/The Hotel Association of New York City, Inc. requests a hearing for clarification of IC Decision #2007-40 published on August 23, 2007.

Hearing held at the Office of the Impartial Chairperson on November 27, 2007.

**APPEARANCES:**

| | |
|---|---|
| For HANYC: | Joseph E. Spinnato<br>President |
| Counsel for HANYC:<br>By: | Kane Kessler PC<br>Stephen Steinbrecher, Esq.<br>David Rothfeld, Esq.<br>Niki Franzitta, Esq.<br>Christian White, Esq. |

For the New York Hotel & Motel Trades Council, AFL-CIO:
Counsel:         Pitta & Dreier LLP
     By:         Joseph Farelli, Esq.

For the Union:   Peter Ward, President
                 Rich Maroko, Esq.
                 Hazel Hazzard
                 Vanessa Meade
                 Steve Miller

* * *

On November 27, 2007, I issued an oral order, which is memorialized herein.

As in all Impartial Chairperson decisions, the Hilton Award #2007-40 has industry-wide application and is final and binding on all parties to the Industry-Wide Agreement ("IWA"). There is nothing in its language that limits or restricts its scope. However, the Award is based upon Article 47(D)(1) of the IWA, which was enacted in 1995 as a Union benefit circumscribing each Hotel's established

**OFFICE OF THE IMPARTIAL CHAIRPERSON**
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2007-85R
Hotel Association of New York City, Inc.
December 4, 2007
Page 2 of 2

practices which remain the starting point of the Award's individual Hotel application.

It is so ordered.

Dated:    December 4, 2007
         New York, New York


PHILIP ROSS, under the penalties of perjury duly affirms that he is the arbitrator described herein, and that he executed the foregoing instrument.

_____
IMPARTIAL CHAIRPERSON

# **EXHIBIT C**

## SETTLEMENT AGREEMENT

AGREEMENT made this 29th day of May, 2007 by and between St. Regis New York Operating LLC d/b/a The St. Regis Hotel ("Hotel") and the New York Hotel & Motel Trades Council, AFL-CIO ("Union").

WHEREAS, the Hotel and Union are parties to the Hotel Association of New York City, Inc. – New York Hotel & Motel Trades Council, AFL-CIO Industry-Wide Collective Bargaining Agreement ("IWA"), and;

WHEREAS, the parties have cross-filed or raised grievances regarding the banquet "Kitty" system maintained at the Hotel and other issues relating to the Banquet Department, and;

NOW, THEREFORE, IT IS AGREED:

1. The current kitty system shall be disbanded. All service charges/gratuities paid from a function shall be distributed to Servers who work the function, based upon the number of covers assigned to each Server.

2. The Hotel rules regarding banquet assignments which are attached hereto shall remain in effect, except for the rules regarding gratuities, forfeiture, sickness, bereavement, injury, and emergency.

3. Rotations shall remain as under the former kitty system. The parties agree that the Hotel shall establish rules on "passing" which shall be adhered to by the Servers.

4. The Union, in its own capacity and as collective bargaining representative for the Hotel's employees, and the Hotel agree that the former "Kitty" system was lawfully constituted and maintained under the IWA.

5. The Union and Hotel further agree to withdraw, with prejudice, the "kitty" grievances (#M04-488 and #U06-508) and any requests related thereto.

6. Nothing herein shall constitute an admission of any liability or fact giving rise to liability.

7. The parties to this Settlement Agreement hereby acknowledge that this Agreement is without precedent and cannot be relied upon or cited in any future cases that do not pertain to the St. Regis banquet servers.

8. Any disputes regarding this Agreement shall be referred to the grievance and arbitration procedure of the IWA.

9. The Effective Date of this Agreement shall be four (4) weeks after a fully executed Agreement has been returned to the Hotel.

ST. REGIS NEW YORK OPERATING
LLC d/b/a THE ST. REGIS HOTEL

By: _____ 5/29/07
Name:
Title: G.M.

NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO

By: _____
Name: MICHAEL SIMI
Title: VP of Reg. Director
5/31/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOSEPH BEJJANI, et al.,

                            Plaintiffs,

      - against -                              07 Civ. 10729 (HB) (DCF)

MANHATTAN SHERATON CORPORATION d/b/a ST.
REGIS HOTEL and NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO,

                            Defendants.
------------------------------------------------------------------------x

CERTIFICATE OF SERVICE

      I, Christine M. Wilson, certify under penalty of perjury that on this 12th day of May, 2008, I caused to be served true and correct copies of defendant Manhattan Sheraton Corporation's Notice of Motion to Dismiss the Second Amended Complaint, Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint, and the Declaration of George Greene dated May 9, 2008, along with exhibits attached thereto, to be served by first class U.S. mail and by electronic means to the following counsel of record:

                    Robert N. Felix, Esq.
                    11 Broadway, Suite 715
                    New York, NY 10004

                    Bruce J. Cooper, Esq.
                    Pitta & Dreier LLP
                    499 Park Avenue
                    New York, New York 10022

                    _____
                    Christine M. Wilson

                    HOGAN & HARTSON LLP
                    875 Third Avenue
                    New York, New York 10022
                    Tel: (212) 918-3000
                    Fax: (212) 918-3100
                    *Attorneys for Defendant Manhattan*
                    *Sheraton Corporation*