UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOSEPH BEJJANI, et al.,

        Plaintiffs,

 - against -           07 Civ. 10729 (HB) (DCF)

MANHATTAN SHERATON CORPORATION d/b/a ST.
REGIS HOTEL and NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO,

        Defendants.
------------------------------------------------------------------------x

## DEFENDANT MANHATTAN SHERATON CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

                Michael Starr, Esq.
                Christine M. Wilson, Esq.
                Hogan & Hartson L.L.P.
                875 Third Avenue
                New York, New York 10022
                (212) 918-3000

                *Attorneys for Defendant Manhattan*
                *Sheraton Corporation d/b/a St. Regis Hotel*

TABLE OF CONTENTS

Page

ARGUMENT ........................................................................................................... 1

POINT I

    THERE IS NO LEGAL AUTHORITY FOR PLAINTIFFS' ATTEMPT TO CONFIRM THE HILTON ROOM RENTAL AWARD AGAINST THE ST. REGIS HOTEL. ................................................................................................... 1

    1.    Plaintiffs Do Not Even Attempt To Offer Legal Authority For Enforcing The Hilton Award Against the St. Regis. .................................... 1

    2.    Plaintiffs Lack Standing Absent the Union's Bad Faith Refusal To Enforce. ................................................................................................ 2

    3.    The Union Decision To Arbitrate Than To Sue To "Confirm" the Hilton Award, Was Well Within The "Wide Range of Reasonableness" Unions Are Allowed. ......................................................... 4

POINT II

    PLAINTIFFS' LABELS AND SPECULATION DO NOT UNDERMINE THE SETTLEMENT AGREEMENT, WHICH FORECLOSES THE TIP POOLING CLAIM. .................................................................................................. 6

POINT III

    THE ALLEGATIONS OF THE COMPLAINT DO NOT ESTABLISH A SECTION 196-D VIOLATION. ................................................................................. 9

CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

<u>CASES</u>

*Air Line Pilots Ass'n v. O'Neill*,
    499 U.S. 65 (1991) ................................................................................................. 6, 8

*American Renaissance Lines v. Saxis Steamship Co.*,
    502 F.2d 674 (2d Cir. 1974) ........................................................................................ 1

*Bell Aerospace Co. v. Local 516*,
    500 F.2d 921 (2d Cir. 1974) ........................................................................................ 5

*Carrion v. Enterprise Ass'n, Metal Trade, Local 638*,
    227 F.3d 29 (2d Cir. 2000) .......................................................................................... 3

*Ceveceria Modelo, S.A. v. USPA Accessories LLC*,
    2008 WL 1710910 (S.D.N.Y. Apr. 10, 2008) ............................................................. 6

*Conn. Light & Power Co. v. Local 420, Electrical Workers*,
    718 F.2d 14 (2d Cir. 1983) .......................................................................................... 2

*Ford v Air Line Pilots Ass'n*,
    268 F. Supp. 2d 271 (E.D.N.Y. 2003) ......................................................................... 7

*Hallinan v. Republic Bank & Trust Co.*,
    2007 WL 39302 (S.D.N.Y. Jan. 8, 2007) ..................................................................... 2

*Hines v. Ford Motor Freight*,
    424 U.S. 554 (1976) ................................................................................................ 2, 3

*Hotel Greystone v. New York Hotel Trades Council*,
    902 F. Supp. 482 (S.D.N.Y. 1995) .............................................................................. 5

*Katir v. Columbia University*,
    15 F.3d 23 (2d Cir. 1994) ............................................................................................ 4

*Nemours & Co.*,
    2006 WL 2993337 (W.D.N.Y. Oct. 20, 2006) ............................................................. 5

*New York Bus Tours Inc. v. Kheel*,
    864 F.2d 9 (2d Cir. 1988) ............................................................................................ 5

*North River Ins. Co. v. Allstate Ins. Co.*,
    866 F. Supp. 123 (S.D.N.Y. 1994) .............................................................................. 2

*Ottley v. Sheepshead Nursing Home,*
   688 F.2d 883 (2d Cir. 1982) ................................................................................. 5

*Piggly Wiggly Operators' Warehouse Truck Drivers Union,*
   611 F.2d 580 (5th Cir. 1980) ................................................................................. 5

*Ruotolo v. City of New York,*
   514 F.3d 184 (2d Cir 2008) ................................................................................... 6

*Samiento v. World Yacht, Inc.,*
   10 N.Y.3d 70 (2008) ............................................................................................ 10

*Santos v. District Council, Carpenters,*
   547 F.2d 197 (2d Cir. 1977) .............................................................................. 3, 4

*Schoenduve Corp. v. Lucent Technologies, Inc.,*
   442 F.3d 727 (9th Cir. 2006) ................................................................................. 5

*Serrano v. DelMonico's Hotel,*
   1992 WL 251447 (S.D.N.Y. Sept. 18, 1992) ........................................................ 4

*Sun Ship, Inc. v. Matson Navigation Co.,*
   785 F.2d 59 (3d Cir. 1986) .................................................................................... 5

*Teamsters, Local Union No. 506 v. E.D. Clapp Corp.,*
   551 F. Supp. 570 (N.D.N.Y. 1982) ....................................................................... 2

*TI Group Automotive v. United Automobile Workers,*
   2004 WL 2377170 (D. Conn. Sept. 27, 2004) ...................................................... 5

*UAW v. Dana Corp.,*
   278 F.3d 548 (6th Cir. 2002) ................................................................................. 2

*United Steel, Paper and Forestry, Rubber, Mfg Energy v. E.I. du Pont de*
   *Nemours & Co.,*
   2006 WL 2993337 (W.D.N.Y. Oct. 20, 2006) ..................................................... 5

*Vaca v. Sipes,*
   386 U.S. 171 (1967) ........................................................................................... 2, 6

*White v. White Rose Food,*
   237 F.3d 174 (2d Cir. 2001) ......................................................................... 4, 6, 7

# ARGUMENT

## Point I

### THERE IS NO LEGAL AUTHORITY FOR PLAINTIFFS' ATTEMPT TO CONFIRM THE HILTON ROOM RENTAL AWARD AGAINST THE ST. REGIS HOTEL.

1. **Plaintiffs Do Not Even Attempt To Offer Legal Authority For Enforcing The Hilton Award Against the St. Regis.**

It is undisputed that the Union is seeking to exact from the St. Regis payment of gratuities on room rental charges by demanding arbitration of that precise issue before the Impartial Chairman ("*IC*"). (SAC ¶¶ 50 & 99.) Plaintiffs' counsel characterizes this as a decision "to relitigate the room rental issue" (Pltfs. Mem. at 18) and insists that the Union should, instead, have moved to confirm the Hilton Award as to the St. Regis and thereby directly impose liability on it, leaving only the task of "assess[ing] the amount of damages, or gratuities owed."

But, the St. Regis was not a party to the Hilton room rental arbitration. And, there is no legal authority to impose on the St. Regis the obligations that an arbitrator imposed on the Hilton, when the St. Regis was neither a party to that proceeding, nor an alter ego or successor to the Hilton. No court has ever confirmed a labor arbitration award under such circumstances. (*See* Hotel Mem. at 10.) Plaintiffs do not deny this lack of legal authority.

Plaintiffs insinuate that the St. Regis is somehow bound by the Hilton Award because it is a party to the same multiemployer agreement and because arbitration awards under the IWA have "industry-wide application." No cases are cited to support this, either, and it runs counter to accepted legal principles.[1] Moreover, whether and to what extent an arbitration award against

---

[1] *Cf. American Renaissance Lines v. Saxis Steamship Co.*, 502 F.2d 674, 677 (2d Cir. 1974) (due to "presumption of separateness," corporation not bound by liability determination in arbitration against

employer "A" under a multiemployer agreement is binding on a subsequent arbitrator in a similar case against employer "B" under the same agreement is a matter of contract interpretation for the arbitrator, not for the courts. (*See* Hotel Mem. at 8.)[2]  Plaintiffs do not dispute this, either.

2. **Plaintiffs Lack Standing Absent the Union's Bad Faith Refusal To Enforce.**

In all cases in which individual employees were allowed to bypass their union and seek confirmation of a labor arbitration award, those employees were the grievants on whose behalf the arbitration was brought. Not so here. No Plaintiff is employed by the Hilton; they are all employed by the St. Regis. That is only the start of Plaintiffs' standing deficiencies.

In *Vaca v. Sipes*, the Supreme Court held that individuals could sue to enforce a labor agreement notwithstanding the union's settlement of their grievance – but only if the union's decision to do so was "arbitrary, discriminatory or in bad faith." 386 U.S. 171, 190-191 (1967). Subsequently, in *Hines v. Ford Motor Freight*, the Court ruled that an individual employee can challenge an arbitration award he lost – but only if the union's handling of the matter breached its duty of fair representation to such an extent that "it seriously undermine[d] the integrity of the arbitral process," caused the process to "fundamentally malfunction" and amounted to more than

---

sister corporation arising from same transaction, even though both were owned and controlled by same individuals). Also, enforcing the Hilton Award without giving the St. Regis an opportunity to be heard on the merits violates due process of law. *See Hallinan v. Republic Bank & Trust Co.*, 2007 WL 39302, at *7 (S.D.N.Y. Jan. 8, 2007) ("The doctrine of privity, in the context of claim preclusion, is shaped by fundamental notions of due process that mandate that a person cannot be bound by a judgment without notice of a claim and an opportunity to be heard") (internal quotations omitted); *see also Teamsters, Local Union No. 506 v. E.D. Clapp Corp.*, 551 F. Supp. 570, 578 (N.D.N.Y. 1982) (vacating arbitration award where union did not have the chance to present its case in full and noting that "principles of fundamental fairness required that the Union be given a full opportunity to present its case to the arbitrator for consideration"), *aff'd*, 742 F.2d 1441 (2d Cir. 1983).

[2] *See also UAW v. Dana Corp.*, 278 F.3d 548, 555-57 (6th Cir. 2002) (preclusive effect of earlier award is "determination to be made by the arbitrator") (reviewing case law); *Conn. Light & Power Co. v. Local 420, Electrical Workers*, 718 F.2d 14, 19-21 (2d Cir. 1983); *North River Ins. Co. v. Allstate Ins. Co.*, 866 F. Supp. 123, 128-29 (S.D.N.Y. 1994).

"mere errors in judgment." 424 U.S. 554, 567, 569-70 (1976). Applying this precedent, courts have held that individual employees have standing to sue to confirm a labor arbitration award in their favor "but only if" the union's failure to do so was a breach of its duty of fair representation. (*See* Hotel Mem. at 9-10.) Once again, Plaintiffs do not dispute or distinguish this authority; they simply ignore it.

Citing a snippet of language from *Carrion v. Enterprise Ass'n, Metal Trade, Local 638*, 227 F.3d 29 (2d Cir. 2000), Plaintiffs insinuate that individuals may confirm an award whenever the union declines to do so, without regard to whether the union's decision was arbitrary, discriminatory or in bad faith – as if *Carrion* would flout the Supreme Court's rulings in *Hines* and *Vaca v. Sipes*. Of course, *Carrion* did no such thing; rather, it expressly stated later in the decision as follows:

> [I]n order to prevail in his hybrid claim, Carrion would have had to show that the Union breached its duty of fair representation to him *by failing* to enforce the terms of the arbitration award.

227 F.3d at 35 (emphasis added).

Thus, it is not a union's failure to enforce an award that *eo ipso* constitutes a breach of its duty of fair representation. It is only, rather, a faithless failure to enforce – that is to say, an arbitrary, discriminatory or bad-faith failure to enforce – that gives individual employees standing to confirm a labor award in their union's stead. And, of course, here, the Union is not "failing to enforce the terms of the arbitration award" at all. It is merely doing so through the IC, not the courts.

Plaintiffs are not helped by *Santos v. District Council, Carpenters*, because, while the court there allowed individuals to sue to enforce an arbitration award, it did so only because, applying *Hines*, the "union's breach of duty [was] sufficiently serious to enable court action."

547 F.2d 197, 202 (2d Cir. 1977). Plaintiffs' citation of *Serrano v. DelMonico's Hotel*, 1992 WL 251447 (S.D.N.Y. Sept. 18, 1992), also misses the mark. *Serrano*, decided in 1992, did not have the benefit of *Katir v. Columbia University*, 15 F.3d 23, 24-25 (2d Cir. 1994), which makes clear beyond all doubt that individual employees have "standing to challenge" a labor arbitration award only if their union's handling of the matter involved a breach of its duty of fair representation. That did not happen here.

3.  **The Union Decision To Arbitrate Than To Sue To "Confirm" the Hilton Award, Was Well Within The "Wide Range of Reasonableness" Unions Are Allowed.**

Plaintiffs are exercised by the Union's decision to arbitrate the St. Regis room rental dispute because that would allow, in their view, a "re-litigat[ion]" of liability. This is at most a tactical dispute, and not evidence of discrimination, arbitrariness or bad faith. Plaintiffs also ignore that taking disputes to voluntary arbitration, rather than to courts, is preferred under federal labor law. (Hotel Mem. at 11.) Indeed, a union's decision to handle disputed legal claims in ways that avoid time-consuming and costly litigation is not irrational, as a matter of law. *See White v. White Rose Food*, 237 F.3d 174, 182 (2d Cir. 2001).

Besides, the Union's tactical decision – were it this Court's role to assess it – is eminently correct. As the IC explained in the Clarification Award, the scope of any hotel's liability under the IWA for gratuities based on room rental charges is fact specific and begins with that hotel's own pre-existing practices. (Hotel Mem. at 9 & Hotel Exh. B.) Thus, even apart from the latitude arbitrators have to determine the extent to which they are bound by a prior award (*see* page 1-2, *supra*), the Hilton Award as construed by the very arbitrator who issued it may not be binding on a hotel with different "established practices."

In ignoring the Clarification Award, Plaintiffs trot out the hoary doctrine of *functus officio*. But, as this Court has already held, due to the history and role of the IC in this industry, that doctrine "does not apply" under the IWA. *Hotel Greystone v. New York Hotel Trades Council*, 902 F.Supp. 482, 485 (S.D.N.Y. 1995). Moreover, the very existence of the Clarification Award shows that the Hilton Award is ambiguous precisely as to its applicability to other industry hotels. Under well-settled law, courts may ***not*** confirm ambiguous labor arbitration awards but must, rather, send them back to the arbitrator – for clarification.[3] Lastly, the Hotel Association sought clarification of the Hilton Award as a separate grievance – namely, as HTC Case # MO7-431 (SAC ¶¶ 87 & 94 & Hotel Exh. B). Arbitrators always have authority to decide contract disputes submitted to them by the parties.[4] Plaintiffs stumble on to the truth when they say that an "arbitrator has no authority [to review compliance with his award] unless the parties agreed to submit the issue of compliance to the arbitrator." (Pltfs. Mem. at 19.) Then, they proceed to ignore that this is exactly what happened here.

Thus, it is really the Plaintiffs who are acting arbitrarily and in bad faith – and also disingenuously to the Court – when they tout the Hilton Award and ignore the Clarification,

---

[3] *See New York Bus Tours Inc. v. Kheel*, 864 F.2d 9, 13 (2d Cir. 1988) ("it is not [the court's] place to determine the intent of an arbitrator when the award fails to make the arbitrator's intent clear"); *Bell Aerospace Co. v. Local 516*, 500 F.2d 921, 924 (2d Cir. 1974) (district court "bound to commit the matter to further arbitration"); *United Steel, Paper and Forestry, Rubber, Mfg Energy v. E.I. du Pont de Nemours & Co.*, 2006 WL 2993337, at *1 (W.D.N.Y. Oct. 20, 2006) (Second Circuit "has long recognized that courts have the authority to remand arbitration awards for clarification or completion"); *TI Group Automotive v. United Automobile Workers*, 2004 WL 2377170, at *4 (D. Conn. Sept. 27, 2004).

[4] *See Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Truck Drivers Union*, 611 F.2d 580, 583-84 (5th Cir. 1980) (leading case); *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir. 1982); *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 733 (9th Cir. 2006); *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 62 (3d Cir. 1986).

which bears directly on the rationality *vel non* of the Union's choice not to seek judicial confirmation.

## Point II

### PLAINTIFFS' LABELS AND SPECULATION DO NOT UNDERMINE THE SETTLEMENT AGREEMENT, WHICH FORECLOSES THE TIP POOLING CLAIM.

The controlling law is clear: "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). Accordingly, "[a] motion to dismiss is properly granted when a complaint . . . provides no 'more than labels and conclusions . . .'" and when the factual allegations fail "'to raise a right to relief above the speculative level.'" *Ceveceria Modelo, S.A. v. USPA Accessories LLC*, 2008 WL 1710910, at *2 (S.D.N.Y. Apr. 10, 2008) (Baer, J). (*See also* Hotel Mem. at 16-18.)

Plaintiffs tacitly agree that the Settlement Agreement bars their tip-pooling claim – unless the Union breached its duty of fair representation in entering into it. They neither address nor distinguish any of the cases on which the Hotel relies – principally, *Vaca v. Sipes*, 386 U.S. 171, 191-92 (1967), *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 77-81 (1991) and *White v. White Rose Food*, 237 F.3d 174, 178-83 (2d Cir. 2001) (*see also* Hotel Mem. at 11). These all establish that a court's "substantive examination" of union settlements "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *O'Neill*, 499 U.S. at 78.

Accordingly, Plaintiffs here would have a claim <u>only</u> if the Settlement Agreement, as "the final product of the bargaining process . . . can be *fairly* characterized as so far outside a *wide range of reasonableness* that it is *wholly irrational or arbitrary*." *Id*. (internal quotations and

citations omitted) (emphasis added). Plaintiffs, however, nowhere allege that the Union's decision to enter into the Settlement Agreement was irrational or arbitrary "under the factual and legal circumstances existing at that time." *See White*, 237 F.3d at 181.

Resorting to hyperbole, Plaintiffs label the Settlement Agreement as a "complete selling out of a bargaining unit," (*see* Pltf. Mem. at 21) – a rhetoric invention of counsel. The complaint itself, rather, alleges and criticizes the Union for meeting with "the [banquet] servers who *did not* wish to exit the Tip Pool" (SAC, ¶ 178 (emphasis added)), thus admitting that different servers had differing views on tip-pooling. Plaintiffs belatedly cast themselves as heroic champions of *all* the banquet servers because, under well-settled law, a union's reasoned decision to support the interests of one group of unit employees over another group in the same bargaining unit cannot constitute arbitrary conduct. (*See* Hotel Mem. at 15-16.) In fact, the one case cited by Plaintiffs on this point actually supports the Hotel's position in its recognition that a union does not breach its duty of fair representation when its actions result in profit for some members of a bargaining unit while loss for other members of the same unit. *See Ford v Air Line Pilots Ass'n*, 268 F. Supp. 2d 271, 279 (E.D.N.Y. 2003).[5]

It is not for the Court to assess the Union's choices among competing interests within the same bargaining unit or to weigh the advisability of the Union's bargain under the hyperbolic label of "sell out." Plaintiffs must show, rather, a "wholly irrational and arbitrary" settlement,

---

[5] The reference to "selling out" in *Ford* actually was from a different case in which a union representing two legally distinct bargaining units sacrificed the interests of one unit for that of the second one it also represented. When a union bargains away or "sells out" the interest of one bargaining unit for the sake of another, that is potentially "irrational" from the perspective of the first unit, which selected the union to represent its interests. But, where, as here, a union compromises among different interests within a single bargaining unit, it is doing precisely what is required of a "collective representative" under federal labor law.

not merely that it is bad or even very, very bad, and surely not that it is bad for some, but acceptable for others. *See O'Neill*, 499 U.S. at 81.

Plaintiffs' objection that the Settlement Agreement provides no back pay is similarly misguided. Though Plaintiffs would have preferred prospectively to disestablish the tip-pooling practice and retrospectively an award of back pay for its prior existence, the Settlement Agreement negotiated by their Union actually secured for Plaintiffs one of their two objectives. That Plaintiffs got less than all they wanted – and some things, like passing rules, that they did not want – is not evidence that the Union acted arbitrarily, or in bad faith, or outside its "wide range of reasonableness." *See O'Neill*, 499 U.S. at 79, 81; *see also* Hotel Mem. at 14-15.

Plaintiffs also fail to allege that the servers even had a credible claim for back pay, given the "factual and legal circumstances existing at the time." Nothing in the IWA (*see* Union Ex. B) expressly forbids the pooling of tips and, in fact, its only relevant provision – Article 47(D), labeled "Gratuities" – authorizes payment of gratuities "pursuant to the established practices in each hotel as of July 1, 1995." (*See* SAC ¶ 172.) The Plaintiffs admit that tip-pooling was the established practice at the St. Regis long before 1995 and that the Hotel showed "determined resistance," *O'Neill*, 499 U.S. at 80, to disbanding it. (SAC ¶¶ 143-44 164, 172.) Plaintiffs admit also that their Union may have in the past agreed to the practice (SAC ¶ 179 & 181), which under the labor arbitration doctrine of "acquiescence" would have foreclosed back pay. *See* F. Elkouri & E. Elkouri, How Arbitration Works, chap. 10.9.B. at 560-61 (6th Ed. 2003). Thus, a Settlement Agreement disbanding the tip pool but without back pay may have been the best option realistically available.

As a last gasp, Plaintiffs allege that the Settlement Agreement represents "collusion" between the Hotel and the Union. Beyond uttering the word, Plaintiffs offer no allegations from

which such an inference could be drawn. All they ever do is point to consultation in the course of the arbitration between counsel for the Union and the Hotel regarding the scope and purpose of certain documents the Union had subpoenaed. (SAC ¶¶ 191-92, 197-201.) This is no more than a court would have ordered if the Hotel had challenged the document subpoena and demanded to know its relevance for the arbitration. Professional courtesy and civility is not collusion as a matter of law. The further insinuation that the Hotel destroyed probative documents once it knew the purpose of the subpoena and that the Union "colluded" with this is scurrilous paranoia. It is not "plausible on its face," and surely does not rise "above the speculative level."

Plaintiffs consider themselves the losers in this an internecine squabble, but have offered no allegation showing that the Union acted irrationally in entering into the Settlement Agreement under the facts and circumstances that existed at the time. Because Plaintiffs cannot establish, as a matter of law, that the Union breached its duty of fair representation by entering into the Settlement Agreement that fully resolved the disputed matter, their tip-pool claim must be dismissed.

### Point III

### THE ALLEGATIONS OF THE COMPLAINT DO NOT ESTABLISH A SECTION 196-d VIOLATION.[6]

As to Plaintiffs' Section 196-d claim, their new counsel asserts that the St. Regis employed tip-pooling as a means "to . . . divert a portion of the plaintiff's *[sic]* gratuities into its own pocket" and further "to fund . . . compensation . . . to other Hotel employees with no

---

[6] The St. Regis also joins in the Union's argument (*see* Union R. Mem. at 4-5) that Plaintiffs' Section 196-d claim was subject to arbitration under the IWA and thus also precluded by the Settlement Agreement.

contractual right to those gratuities." (Pltf. Mem. at 23.) According to the complaint, however, the tip pool "was 'designed' by the hotel to guarantee that all banquet servers all earn the same amount of gratuities." (SAC ¶ 114.) While Plaintiffs may decry such egalitarianism, that is not "divert[ing]" gratuities to line the Hotel's own pocket.

The complaint also says nothing about using pooled tips to pay workers with "no contractual right" to gratuities. That still would not violate Section 196-d, which requires only that gratuities be shared among servers, bussers, and "*all other* similar employees" who participated in the banquet function. *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70, 80 (2008) (emphasis added). There is no *statutory* requirement that tips collected from a banquet be awarded only to employees under the same labor agreement as Plaintiffs.

In sum, neither the actual allegations of the complaint (*see* Hotel Mem. at 23-24) nor the exaggerated assertions of Plaintiff's new counsel state a claim for a violation of Section 196-d.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment should be granted in its entirety.

Dated: New York, New York
        June 30, 2008

HOGAN & HARTSON LLP

By: ___/s/ Michael Starr_____

Michael Starr (MS 6851)
Christine M. Wilson (CW 3440)
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Defendants*